**2015 UT App 94**

## THE UTAH COURT OF APPEALS

LAURIE L. MITCHELL,
Petitioner,
*v.*
LABOR COMMISSION, MILLIKEN & CO.,
AND LIBERTY MUTUAL,
Respondents.

Memorandum Decision
No. 20131153-CA
Filed April 16, 2015

Original Proceeding in this Court

Virginius Dabney and Robert W. Ickes,
Attorneys for Petitioner

Jaceson R. Maughan, Attorney for Respondent
Labor Commission

Dori K. Petersen, Attorney for Respondents
Milliken & Co. and Liberty Mutual

JUDGE MICHELE M. CHRISTIANSEN authored this Memorandum
Decision, in which JUDGES J. FREDERIC VOROS JR. and KATE A.
TOOMEY concurred.

CHRISTIANSEN, Judge:

¶1      Laurie L. Mitchell was an employee of Milliken & Co., a
St. George textile company. In 2007, she was treated for pain and
tendon impingement in her right shoulder. The following year,
she suffered an injury to her right shoulder at work when she
attempted to throw a rope over the rollers of a fabric-winding
machine. At that time, Mitchell was diagnosed with an acute tear
of her right rotator cuff and chronic injury to the tendons of her

rotator cuff. After this accident, Mitchell applied for workers' compensation benefits. The Labor Commission denied Mitchell's application, reasoning that her preexisting shoulder condition had contributed to her injury and that she had not shown that her work activities were an unusual exertion that increased her risk of aggravating that preexisting condition. She now seeks judicial review of the Commission's decision.

¶2    Generally, an employee is entitled to workers' compensation benefits if she can demonstrate that she was injured by an accident at her workplace "arising out of and in the course of [her] employment." Utah Code Ann. § 34A-2-401(1) (LexisNexis 2005). The Utah Supreme Court has explained that to show that an accident "aris[es] out of [and] in the course of employment," the employee must demonstrate that the conditions or activities of her job were both the medical and legal cause of the injury. *Murray v. Labor Comm'n*, 2013 UT 38, ¶¶ 44–45, 308 P.3d 461 (second alteration in original) (citation and internal quotation marks omitted). For a claimant who does not suffer from a preexisting condition that contributes to the injury, the medical and legal causation requirements are identical and the employee need only prove medical causation. *Id.* ¶ 45. However, where the claimant has a preexisting condition that contributes to the injury, the claimant must show that "the employment contributed something substantial to increase the risk [she] already faced in everyday life because of [her] condition," usually by demonstrating that the activities or conditions of her work were "unusual or extraordinary" as compared to "the usual wear and tear and exertions of nonemployment life." *Id.* ¶¶ 46, 48 (citations and internal quotation marks omitted).

¶3    Mitchell raises three issues in her petition for judicial review. First, she argues that she should not have been required to demonstrate an "unusual exertion" in order to prove that her workplace accident was the legal cause of her injury. "[W]here the claimant suffers from a preexisting condition which

contributes to the injury, an unusual or extraordinary exertion is required to prove legal causation." *Allen v. Industrial Comm'n*, 729 P.2d 15, 26 (Utah 1986). Mitchell argues that "[n]o medical opinion exists in this case that establishes" that Mitchell's preexisting condition contributed to her work injury. We disagree.

¶4      "We must uphold the Commission's factual findings if such findings are supported by substantial evidence based upon the record as a whole." *Estate of Reitz v. Labor Comm'n*, 2014 UT App 290, ¶ 5, 341 P.3d 257 (citation and internal quotation marks omitted). The Commission found that "Mitchell had a pre-existing right-shoulder condition that contributed to her work injury." The Commission's finding is supported by the uncontradicted medical opinion of Milliken's medical expert, who opined that Mitchell's "pre-existing impingement syndrome certainly contributed to the subsequent right shoulder problems" and that Mitchell's injury was "an industrial aggravation of a pre-existing right shoulder condition." We therefore conclude that the finding is supported by substantial evidence and, accordingly, that the Commission did not err in determining that Mitchell needed to show an unusual or extraordinary exertion to prove legal causation. *See id.; see also Allen*, 729 P.2d at 26.

¶5      Next, Mitchell argues that the Commission erred in concluding that throwing the rope over the winding machine did not constitute an unusual exertion. In evaluating whether Mitchell's employment activity involved an unusual or extraordinary exertion, we must consider "the totality of the circumstances" of the employment activity, "including the employee's exertions and the workplace conditions." *Murray*, 2013 UT 38, ¶ 47. We then decide whether the employment activity is "objectively unusual or extraordinary." *Id.* ¶ 48. In doing so, we must "compare the activity that precipitated the employee's injury with the usual wear and tear and exertions of nonemployment life." *Id.* (citation and internal quotation marks

omitted). The focus of this inquiry is on "what typical nonemployment activities are generally expected of people in today's society, not what this particular claimant is accustomed to doing." *Id.* (citation and internal quotation marks omitted).

¶6      The parties do not dispute the factual circumstances of Mitchell's injury as found by the Commission:

> Mitchell tried to throw a rope upwards and over one of the machine's rollers, which was approximately 15 feet off the ground. The entire weight of the rope was less than 10 pounds and the portion [Mitchell] was throwing weighed about two pounds. [Mitchell] twice attempted to throw one end of the rope over the roller without success. On the third attempt, she threw the rope underhand and felt a tearing sensation in her right shoulder.

"Utah courts have deemed employment activities to be 'unusual' or 'extraordinary' when they require an employee to endure jumping, lifting great weight, or repetition." *Murray*, 2013 UT 38, ¶ 51. For example, our courts have recognized that moving a two-hundred-pound sign, jumping into an eight-foot hole at thirty-minute intervals, and continually gripping a high-pressure hose are unusual activities. *Id.* However, enduring minor force or jostling and carrying loads of fifteen pounds or more involve exertions "comparable to nonemployment activities generally expected in today's society." *Id.* ¶ 53 (noting that travelers generally carry luggage or bags heavier than fifteen pounds). "Typical activities and exertions" include "taking full garbage cans to the street, lifting and carrying baggage for travel, changing a flat tire on an automobile, lifting a small child to chest height, and climbing the stairs in buildings." *Allen*, 729 P.2d at 26.

¶7 The Commission determined that Mitchell's work activity was not unusual or extraordinary. The ALJ characterized the activity as "throwing a light rope up and over a roller," and concluded that this activity was less strenuous than a number of common nonemployment exertions. The ALJ determined that the action was similar to casting a fishing line, throwing a rope to secure a load in a truck or trailer, or throwing a rope over a branch to hang a child's swing. The ALJ determined that throwing the rope required less exertion than lifting a child up or lifting luggage into an overhead bin on an airplane. In affirming the ALJ's decision, the Commission largely rejected the ALJ's comparisons, explaining that the activities identified by the ALJ were either dissimilar to the "sudden upward rotation of the shoulder" involved here or not sufficiently common nonwork activities. The Commission instead analogized Mitchell's rope toss to shaking out a rug or bowling, concluding that these are common nonemployment activities that involve similar exertions.

¶8 Because "'unusualness' . . . is an objective legal standard that we are in a better position to analyze than the Commission," we must determine whether the circumstances of Mitchell's injury were unusual without deference to the Commission's decision. *Murray v. Labor Comm'n*, 2013 UT 38, ¶ 40, 308 P.3d 461. However, as the party seeking relief from the Commission's action, Mitchell bears the burden of demonstrating that the Commission's determination was erroneous. *O'Rourke v. Utah State Tax Comm'n*, 830 P.2d 230, 232 (Utah 1992). We conclude that she has failed to meet her burden here.

¶9 Mitchell argues that "the dynamics of her having to throw [two pounds of rope] up approximately 15 feet off the floor and over a winding machine is unusual." While she faults the Commission's comparisons of this exertion to those involved in bowling or shaking a rug as inexact or ill-defined, Mitchell does nothing to demonstrate that her action in throwing the rope is comparable to activities our courts have deemed unusual or

extraordinary. She has not shown that throwing a small mass of rope in the air is in the same class of exertion as moving a two-hundred-pound sign or repeatedly jumping into an eight-foot pit. *See Murray*, 2013 UT 38, ¶ 51. Indeed, she has failed to explain how this activity involves a greater exertion than handling full garbage cans or carrying a loaded suitcase, both of which involve significantly greater static loads but are considered "typical" exertions by our courts. *See Allen v. Industrial Comm'n*, 729 P.2d 15, 26 (Utah 1986). Ultimately, Mitchell simply has not demonstrated that the underhand throw of a two-pound weight must be "presumed to have contributed something substantial to increase the risk of injury" above and beyond a normal, everyday activity or that the Commission erred in concluding otherwise. *See Murray*, 2013 UT 38, ¶ 53 (citation and internal quotation marks omitted). Because she has not met her burden to demonstrate that the Commission's determination was erroneous, we decline to disturb that ruling.

¶10　Last, Mitchell argues that *Allen v. Industrial Commission*, 729 P.2d 15 (Utah 1986), creates an "unworkable and outdated standard that discriminates against disabled and elderly workers with pre-existing conditions" and "should be reviewed for its future application in workers compensation law." "Vertical stare decisis . . . compels a court to follow strictly the decisions rendered by a higher court." *State v. Menzies*, 889 P.2d 393, 399 n.3 (Utah 1994). "Under this mandate, lower courts are obliged to follow the holding of a higher court . . . ." *Id. Allen* was decided by the Utah Supreme Court in 1986, and the principles embodied in *Allen* were reaffirmed by that court in *Murray v. Labor Commission*, 2013 UT 38, 308 P.3d 461. This court must "follow strictly the decisions rendered by" the Utah Supreme Court, *Menzies*, 889 P.2d at 399 n.3, and we are therefore not empowered to revisit or depart from the *Allen* rule in workers' compensation cases. Accordingly, we must reject Mitchell's invitation for us to do so.

¶11 The Commission's finding that Mitchell's preexisting condition contributed to her industrial accident is supported by the record, and the Commission therefore correctly required Mitchell to demonstrate an unusual or extraordinary exertion to prove legal causation. Mitchell has failed to demonstrate error in the Commission's determination that her work activities did not require an unusual or extraordinary exertion. And we cannot depart from our supreme court's precedent in *Allen* regarding the application of the unusual-exertion doctrine in workers' compensation cases. We therefore decline to disturb the Commission's ruling denying Mitchell's claim for workers' compensation benefits.

_____