**2016 UT App 65**

### THE UTAH COURT OF APPEALS

CHARLOTTE LYNN BADE-BROWN,
Petitioner,

*v.*

LABOR COMMISSION, LOW BOOK SALES AND LEASING,
AND MID CENTURY INSURANCE COMPANY,
Respondents.

Memorandum Decision
No. 20141052-CA
Filed April 7, 2016

Original Proceeding in this Court

Stony Olsen, Attorney for Petitioner

Jaceson R. Maughan, Attorney for Respondent
Labor Commission

Brad J. Miller and J. Tyler Martin, Attorneys
for Respondents Low Book Sales and Leasing and
Mid Century Insurance Company

JUDGE STEPHEN L. ROTH authored this Memorandum Decision, in
which JUDGES J. FREDERIC VOROS JR. and KATE A. TOOMEY
concurred.

ROTH, Judge:

¶1     Charlotte Lynn Bade-Brown (Petitioner) seeks review of
the Labor Commission's (the Commission) order partially
denying her claim for benefits under Utah's Workers'
Compensation Act. We decline to disturb the Commission's
order.

BACKGROUND

¶2     On July 9, 2007, Petitioner was test-driving a vehicle for her employer, Low Book Sales and Leasing. While she was driving on the interstate, the vehicle "began to die." As Petitioner attempted to pull the car over, a dump-truck "hit her in the rear driver's side." Petitioner was taken to the emergency room and was diagnosed with "a head contusion," "back strain, cervical strain, and a chest wall contusion." Between July 2007 and March 2011, Petitioner reported experiencing "headaches" as well as pain in her neck, thoracic back, and low back. She eventually underwent surgery on April 13, 2011, to relieve the pain.

¶3     On November 28, 2012, she applied for a hearing with the Commission, seeking temporary total disability compensation for the period of April 13, 2011, through April 11, 2012. On October 29, 2013, the Administrative Law Judge (the ALJ) issued its Amended Interim Findings of Fact and Conclusions of Law in which it determined, among other things, that there was a controversy regarding the "medical cause of Petitioner's current neck, thoracic back, headaches, and low back problems," as well as the "date of medical stability." Accordingly, the ALJ ordered that the "medical aspects of the case" be referred to an independent medical panel.

¶4     The medical panel found "no medically demonstrable causal connection between the [Petitioner's] current headaches, neck, thoracic, and low back pain" and the July 2007 accident. The panel concluded that while Petitioner "may have suffered strains/sprains of the cervical, thoracic, and lumbar spines" and "may have had cervicogenic headaches" due to the accident, those symptoms "would have resolved within the first few months after the accident." It based this conclusion on evidence that the initial pain was "mostly in [her] chest" and that the "wide spread pain" did not "appear in her medical record until several months after the accident." The panel also noted that

Petitioner had had "multiple scans visualizing all of the potentially affected body areas" and that none of them indicated anything other than "mild degenerative changes appropriate for her age." The panel then concluded that Petitioner's medical condition stabilized within six months of the accident and assigned January 1, 2008, as the medical stabilization date.

¶5     Petitioner timely objected to the medical panel's report. However, the ALJ determined in its May 2014 Findings of Fact, Conclusions of Law, and Order that "[a] preponderance of the medical evidence supports a finding that there is no medical causal connection" between Petitioner's headaches, back and neck pain, and the accident. The ALJ also found that the preponderance of the evidence established that Petitioner reached medical stability as of January 2008, like the medical panel had found. Because Petitioner sought disability benefits for a period beginning in April 2011, the ALJ determined that Petitioner was not entitled to "any additional temporary total disability compensation" and dismissed with prejudice Petitioner's claims for "temporary total disability compensation, medical treatment, and permanent partial disability compensation."

¶6     Petitioner filed a motion for review with the Commission, arguing that the ALJ abused its discretion by admitting the medical panel report into evidence despite glaring deficiencies in the report, and that the report should have been excluded or, alternatively, that a hearing should have been held to resolve the deficiencies. Petitioner also argued that a hearing should have been held to investigate potential bias of the medical panel's chairman, alleging that the chairman was biased against injured workers. In response, the Commission determined that the medical panel's conclusion about medical causation was "supported by the medical evidence," that it was "the product of impartial [review]," and that, as the ALJ had determined, Petitioner was not entitled to benefits between April 2011 and

April 2012. In particular, the Commission found that Drs. Anden, Passey, and Knoebel, who had previously examined Petitioner, had all concluded, as did the medical panel, that Petitioner's "current complaints" were the product of "a separate condition that was not medically caused by the accident." It also noted that only one doctor—Dr. Humpherys—had found Petitioner's "ongoing neck and back problems" to be "causally connected to the accident." The Commission agreed with Petitioner, however, that the medical panel's conclusion regarding the January 2008 medical stability date was "not supported by the medical evidence" and that the medical panel's Maximum Medical Improvement (MMI)[1] date determination appeared instead to be simply "an estimation based on the panel's experience." The Commission determined that it was therefore "not bound by that finding in the panel's report." Nonetheless, the Commission determined that because there was no causal connection between Petitioner's "current" complaints and the accident, the "medical panel's opinion on the date of medical stability does not alter any entitlement she may have to such benefits."

¶7     Petitioner filed a motion for reconsideration, which the Commission denied. Petitioner seeks judicial review.


ISSUES AND STANDARD OF REVIEW

¶8     Petitioner presents two challenges to the Commission's order. First, she argues that the Commission erred by affirming the ALJ's refusal to exclude the medical panel report. Second,

---

1. The MMI is the date that "the period of healing has ended and the condition of the claimant will not materially improve" and is thus "the critical point for termination of temporary disability." *See Reddish v. Sentinel Consumer Prods.*, 771 P.2d 1103, 1104 (Utah Ct. App. 1989) (citation and internal quotation marks omitted).

she argues, in the alternative, that the Commission abused its discretion by not remanding the case for a hearing to resolve the alleged deficiencies in the medical panel report and to investigate potential bias of the medical panel. We review the Commission's refusal to exclude a medical panel report or remand for an objection hearing "under an abuse of discretion standard, providing relief only if a reasonable basis for that decision is not apparent from the record." *Borja v. Labor Comm'n*, 2014 UT App 123, ¶ 9, 327 P.3d 1223 (citation and internal quotation marks omitted).

ANALYSIS

¶9      Petitioner argues that the Commission abused its discretion by admitting the medical panel report into evidence. She first contends that the medical panel report should have been excluded because of its "glaring" failure to "find [a] medically supportable [MMI]" date. She next contends that the reports the medical panel (and, later, the Commission) relied on to make its MMI and causation determinations had "glaring deficiencies themselves." She then asserts that the medical panel report should also have been excluded on the basis of potential bias. While she contends that these deficiencies can only be cured by excluding the medical panel report, she alternatively argues that the Commission should not have denied her request for a hearing to resolve these objections.

¶10     As we explained in *Johnston v. Labor Commission*, 2013 UT App 179, 307 P.3d 615, Utah Code section 34A-2-601 "contemplates three potential scenarios in which a medical panel report can be admitted into evidence." *Id.* ¶ 26. The first is "where no objection to the medical report is made" and the report is "admitted into evidence." *Id.*; *see also* Utah Code Ann. § 34A-2-601(2)(f)(i) (LexisNexis Supp. 2015). The second "occurs when an objection to the medical panel report is timely filed *and* the administrative law judge . . . convenes a hearing on the

objection." *Johnston*, 2013 UT App 179, ¶ 26; *see also* Utah Code Ann. § 34A-2-601(2)(f)(i). In this scenario, the medical panel report "'may not be considered as evidence . . . except as far as the report is sustained by the testimony admitted.'" *Johnston*, 2013 UT App 179, ¶ 26 (quoting Utah Code Ann. § 34A-2-601(2)(g)(ii)). The third scenario, not expressly addressed in the statute, describes the circumstances here—"when an objection to the report is timely filed but the administrative law judge elects not to hold an objection hearing." *Johnston*, 2013 UT App 179, ¶ 27; *see also* Utah Code Ann. § 34A-2-601(2)(f)(i). We determined in *Johnston* that the "third scenario appears to turn on whether the administrative law judge properly exercised her discretion in denying a hearing and, if the denial was proper, whether the objection to the medical panel report was well taken." *Johnston*, 2013 UT App 179, ¶ 28. If the objection is obviously well taken, "no amount of supporting testimony [can] overcome the report's glaring deficiencies" and the "objection should simply be sustained and the medical panel report excluded." *Id.* ¶ 30. However, if the objection is obviously "not well taken, then the medical panel report will have no readily apparent deficiencies and [additional] supporting foundational testimony will not be necessary to substantiate the report's validity." *Id.*

¶11 We therefore address the question of whether the medical panel report was admissible by following the analytic structure set out in *Johnston*. We first determine whether an objection hearing was properly denied and then determine whether, in light of the deficiencies Petitioner asserts, the medical panel report was properly admitted.

## I. Denial of Petitioner's Objection Hearing

¶12 As a general matter, the medical panel's role is to assist the Commission by "evaluat[ing] medical evidence" and advising the Commission "with respect to [its] ultimate fact-finding responsibility." *See Blair v. Labor Comm'n*, 2011 UT App 248, ¶ 18, 262 P.3d 456 (citation and internal quotation marks

omitted). This assistance is particularly important in cases like Petitioner's, where medical causation is at issue. Medical causation requires the claimant to prove by a preponderance of the evidence that "the disability is medically the result of an exertion or injury that occurred during a work-related activity." *See Allen v. Industrial Comm'n*, 729 P.2d 15, 23, 26 (Utah 1986). Obtaining "the expertise of the medical panel" should more readily enable the Commission "to make the determination of whether the injury sustained by a claimant is causally connected or contributed to by the claimant's employment." *Id.* at 27 (citation and internal quotation marks omitted).

¶13    While it certainly "is not unusual for . . . the Commission to adopt the findings of a medical panel," *Moyes v. State*, 699 P.2d 748, 753 (Utah 1985), the Commission is not required to do so, *see* Utah Code Ann. § 34A-2-601(e)(ii) ("[A]n administrative law judge is not bound by a [medical panel] report . . . if other substantial conflicting evidence in the case supports a contrary finding."). Even if the ALJ chooses to adopt the medical panel's report, "it is the prerogative and the duty of the Commission to consider not only the report of the medical panel, but also all of the other evidence and to draw whatever inferences and deductions fairly and reasonably could be derived therefrom." *Blair*, 2011 UT App 248, ¶ 19 (citation and internal quotation marks omitted). Ultimately, the Commission, not the medical panel, is the fact-finder, and in that capacity, it may "choose to give certain evidence more weight than other evidence," so long as there is "substantial evidence when viewed in light of the whole record" to support its findings. *See Virgin v. Board of Review*, 803 P.2d 1284, 1287, 1289 (Utah Ct. App. 1990) (citation and internal quotation marks omitted).

A.    The Report's MMI Error

¶14    Petitioner cites *Johnston* to support her argument that it is an abuse of discretion for an ALJ to deny a hearing if an

objection identifies a potentially "glaring deficienc[y]" in the medical panel report. (Citing *Johnston*, 2013 UT App 179, ¶ 30.) An objection based on such errors, she asserts, is "well taken." But *Johnston* does not say that a hearing is necessary to resolve all objections to or errors in a medical panel report. Rather, *Johnston* holds that it is wrong to deny a hearing only when there is no "reasonable basis" discernible from the record to justify that denial. The implication of this holding is that not every error in a medical panel report will be "glaring," in the sense that it will "substantially impair the adequacy" of the Commission's ultimate findings and conclusions, particularly when the Commission declines to adopt the error. *See Moyes*, 699 P.2d at 753. In other words, not all errors are of sufficient significance to justify the time and expense of a hearing, and the ALJ's discretion whether to hold an objection hearing must also include discretion to assess the relative significance of an error in the medical panel's report. *See* Utah Code Ann. § 34A-2-601(2)(f)(i) ("If a written objection to a [medical panel] report is filed, . . . the administrative law judge *may* set the case for hearing to determine the facts and issues involved." (emphasis added)).

¶15    The Commission may also, in its role as the ultimate fact-finder, choose to "rely on one portion of a medical panel report and to reject other inconsistent portions." *Virgin*, 803 P.2d at 1290; *see also* Utah Code Ann. § 34A-2-601(2)(e)(ii). If the Commission chooses to reject a portion of the medical panel's report, so long as there is substantial evidence on the record independent of the report to support the Commission's findings, further inquiry by way of a hearing is not required. *See Intermountain Health Care, Inc. v. Board of Review*, 839 P.2d 841, 846 (Utah Ct. App. 1992) ("It is not the role of the medical panel to resolve conflicts in the factual evidence regarding the injured party's activities." (citation and internal quotation marks omitted)); *see also Moyes*, 699 P.2d at 753 ("[I]t [is] the prerogative and the duty of the Commission to consider not only the report

of the medical panel, but also all of the other evidence and to draw whatever inferences and deductions [that] fairly and reasonably could be derived therefrom." (second and third alterations in original) (citation and internal quotation marks omitted)).

¶16 In this case, the Commission had a "reasonable basis" to affirm the ALJ's decision to deny a hearing on the MMI date error in the medical panel report. The Commission concluded that the medical panel's MMI finding was not supported by the evidence and that it was error for the ALJ to adopt that finding. But the Commission also concluded, through its own independent evaluation of the record, that even if the finding placing MMI on January 1, 2008, was wrong, other "substantial evidence" supported an MMI date prior to April 2011. The Commission relied on several medical records showing that "[Petitioner] was medically stable from her work injuries by mid 2008, which was years before she underwent cervical-spine surgery." For example, Dr. Brandt stated in April 2008 that Petitioner "is nearing maximum medical improvement" and again in July 2008 that Petitioner was "reaching medical stability." Dr. Passey stated in June 2008 that "[t]he [Petitioner] has achieved maximal Medical improvement." Dr. Knoebel stated that Petitioner had reached maximum medical improvement as of June 4, 2008. Only Dr. Humpherys opined that Petitioner reached MMI after her 2011 surgery. As a result, the Commission in essence concluded that the medical panel's flawed MMI finding was harmless because the preponderance of the evidence still indicated that Petitioner was not entitled to benefits between April 2011 and April 2012. *See Blair*, 2011 UT App 248, ¶ 13 (concluding that an omission regarding medical history in an ALJ's interim findings was "harmless" because the reviewing medical panel received a copy of the medical records exhibit and based its report on those records).

¶17   We are not persuaded that the Commission's decision not to remand to the ALJ for a hearing on the medical panel report was an abuse of discretion. Although the Commission ultimately rejected the medical panel's date for Petitioner's MMI, three of the four doctors to opine on the question agreed that Petitioner achieved MMI before her 2011 surgery. And even though the panel's MMI finding was ultimately rejected by the Commission, the panel's overall conclusion regarding causation was not.[2]

B.      Medical Report Unreliability

¶18   We also are not persuaded that it was an abuse of discretion for the Commission to deny an objection hearing to resolve the alleged unreliability of certain doctors' reports that the Commission relied upon to make its causation conclusions. Petitioner argues that the reports the Commission primarily relied upon to conclude that she had reached MMI prior to her

---

2. To the extent that Petitioner's argument may encompass a claim that the MMI error amounted to such a "glaring deficiency" that the panel's report ought to have been disregarded entirely, we note that the Commission concluded that the panel's MMI date likely came from a professional judgment based on medical experience rather than on the specific facts of the case and therefore did not consider the error to be broadly disqualifying. Because the Commission found that the medical panel's MMI error was not a "material misstatement of fact . . . because other substantial evidence preponderates to show that [Petitioner] was medically stable from her work injuries prior to her cervical-spine surgery," the Commission's judgment in this regard is entitled to deference. "We must uphold the Commission's factual findings if such findings are supported by substantial evidence based upon the record as a whole." *Mitchell v. Labor Comm'n*, 2015 UT App 94, ¶ 4, 348 P.3d 356 (citation and internal quotation marks omitted).

2011 surgery—the reports of Drs. Brandt, Passey, and Knoebel—each had deficiencies that should have disqualified them and any conclusions drawn from them. In particular, Petitioner asserts that Dr. Brandt "never actually fixed a date of MMI" but instead just stated that Petitioner "was approaching or reaching MMI"; that Dr. Passey "minimized" and "somehow managed to miss the . . . reports of radicular symptoms" and was instead "intent on diagnosing the [Petitioner] with fibromyalgia"; and that Dr. Knoebel merely "relied on his belief that there were no reports prior to 2011 of [Petitioner] suffering any radicular symptoms" when he opined that MMI had been reached as of June 2008, and completely "ignored" Petitioner's doctor's visit in September 2007 that "clearly showed significant and specific [radicular] pain." Petitioner also contends that "the doctors that did notice the [early] radicular symptoms . . . also either found medical causation or said causation was quite possible." Petitioner argues that based on the allegedly deficient medical opinions, the Commission erroneously adopted a finding that Petitioner "did not have widespread pain for months after the accident" and "any pain attributable to the accident would have resolved itself within a few months."

¶19    Petitioner essentially argues that the Commission should have given more weight to certain doctor's reports—in particular, Dr. Humpherys's report—and that it was an error for the Commission to have taken "Doctors Brandt, Knoebel, and Passey's timeframe [regarding causation and MMI] over Dr. Humpherys's." We disagree. It is the Commission's role as the ultimate fact-finder to weigh the evidence and make credibility determinations. *See Virgin v. Board of Review*, 803 P.2d 1284, 1289 (Utah Ct. App. 1990) (stating that "the Commission is the ultimate fact finder in workers' compensation cases" and "may choose to give certain evidence more weight than other evidence"). An appellate court will not "reweigh the evidence" unless the petitioner is able to show that the Commission's findings and conclusions regarding causation are not supported

by "substantial evidence." *See Danny's Drywall v. Labor Comm'n*, 2014 UT App 277, ¶ 31, 339 P.3d 624 ("[T]his court may not reweigh the evidence because assigning such weights is the prerogative of the Commission." (citation and internal quotation marks omitted)). As discussed above, it is "the province of [the Commission]"—not the medical panel—"to view *all* the evidence submitted as a whole and then make an appropriate determination." *Johnston v. Labor Comm'n*, 2013 UT App 179, ¶ 24, 307 P.3d 615 (emphasis added). We will not revisit the Commission's conclusions where the Commission considered the available evidence on the record—including, but not limited to, the medical panel's report and the ALJ's findings—and thereafter determined that "substantial evidence" supported one determination more than another.

¶20     Here, it is apparent that the Commission considered the available evidence prior to determining that there was "substantial evidence [to] support [an MMI] finding contrary to the medical panel's opinion and [which] outweighs the opinion of Dr. Humpherys."[3] In its order affirming the ALJ's decision, the Commission specifically noted that the reports of Drs. Anden, Passey, and Brandt each "differentiated" between

---

3. We also note that the Commission, in its order denying request for reconsideration, specifically found that "[t]he preponderance of the evidence is contrary to Dr. Humpherys's opinion with regard to the date of medical stability in question." This finding is entitled to our deference. *See Migliaccio v. Labor Comm'n*, 2013 UT App 51, ¶ 7, 298 P.3d 676 ("It is not the role of this court to reweigh the evidence and substitute our conclusion for that of the Commission. Instead, we defer to the Commission's findings because, when reasonably conflicting views arise, it is the Commission's province to draw inferences and resolve these conflicts." (citation and internal quotation marks omitted)).

"separate symptoms characterized as myofascial pain that was not medically caused by the accident" and the "strains to [Petitioner's] spine" that were caused by the accident. It stated that "the medical panel acknowledged that [Petitioner] may have suffered . . . headaches and strains in her neck and back from the accident" but that "[t]he opinions of Dr. Passey and Dr. Knoebel support the medical panel's conclusion that [Petitioner's] current complaints for which she seeks benefits are not the spinal strains from the accident but [are instead] a separate condition that was not medically caused by the accident." The Commission also noted that the "imaging studies" the medical panel based its causation conclusion upon "reveal[ed] only nonspecific findings in [Petitioner's] spine." Based on this, the Commission determined that "[t]he opinions of Dr. Anden, Dr. Passey, Dr. Knoebel, *and* the medical panel show that [Petitioner] sustained only temporary strains from the work accident, while only Dr. Humpherys found [Petitioner's] ongoing neck and back problems" to be medically caused by the accident. (Emphasis added.) The Commission ultimately concluded that "[Petitioner] has not established that her current condition was medically caused by the 2007 work accident."

¶21 Petitioner has not demonstrated that this conclusion was unsupported by the evidence. Rather, Petitioner merely suggests that Drs. Brandt, Passey, and Knoebel "minimized" or inappropriately focused on other potential causes of Petitioner's ongoing pain. However, even if individual doctor's reports might have disagreed regarding the chronology of Petitioner's symptoms and treatment recommendations, those disagreements do not render their medical opinions inherently deficient or flawed. *Cf. Danny's Drywall*, 2014 UT App 277, ¶ 30 ("The presence of conflicting evidence does not negate the administrative law judge's discretion to base his or her findings on the medical panel report."). Nor will those disagreements necessarily render the medical panel's findings or the Commission's conclusions drawn from the medical reports

glaringly deficient. *See id.*; *Intermountain Health Care, Inc. v. Board of Review*, 839 P.2d 841, 846 (Utah Ct. App. 1992).

¶22 Moreover, Petitioner's own disagreement with certain medical opinions does not render those medical opinions any less substantial. "While Petitioner[] ha[s] identified a possible conflict in the evidence, [i]t is the province of [the Commission], not appellate courts, to resolve conflicting evidence, and where inconsistent inferences can be drawn from the same evidence, it is for [the Commission] to draw the inferences." *Cook v. Labor Comm'n*, 2013 UT App 286, ¶ 19, 317 P.3d 464 (third alteration in original) (citation and internal quotation marks omitted). A petitioner cannot bear her burden of persuading an appellate court that the Commission abused its discretion when the Commission denied a hearing to resolve conflicts in the medical evidence by merely suggesting that the medical reports relied upon ignored or minimized particular evidence that a petitioner believes would otherwise support causation arguments. That is just the sort of evidentiary conflict that is within the Commission's purview to resolve. Thus, Petitioner has not persuaded us that the Commission erred when it relied on those reports to reach its causation conclusion. As a result, we are unable to conclude that the Commission abused its discretion when it declined to hold a hearing to resolve the MMI causation issue.

C.    Potential Medical Panel Chair Bias

¶23 Petitioner also contends that the Commission should have ordered a hearing to determine whether the medical panel's report was the result of bias—that is, to "ferret out any possible bias in favor of the insurance industry." Petitioner alleges that there is "at minimum a heavy appearance of bias" in her case because Dr. Jarvis, the panel's chair, "has established a pattern of ignoring evidence that favors the injured worker." In support of this allegation, Petitioner cites a February 2013 "Performance

Audit of the Labor Commission's Adjudication Division" completed by Utah's Office of the Legislative Auditor General that obliquely questioned the objectivity of two unnamed occupational medicine panel chairs because of their "close ties" to insurance companies. Petitioner also cites a decision of this court, *Blair v. Labor Commission*, 2011 UT App 248, 262 P.3d 456, where Dr. Jarvis served on the medical panel, and she claims that in that case Dr. Jarvis "also . . . failed to consider any evidence favoring the injured worker."

¶24    Petitioner presented these arguments to the Commission, and the Commission rejected them. The Commission determined that Petitioner's "allegation [was] not substantiated with any evidence of actual bias" and was "merely speculation based on inferences from a legislative audit on the Adjudication Division and its use of medical panels." The Commission stated that Petitioner "fail[ed] to acknowledge . . . the many instances in which Dr. Jarvis's medical opinions have been favorable to injured workers" and, moreover, that Petitioner had "not shown that the medical panel was actually biased against her." On that basis, it rejected her argument "that the medical panel's report should be excluded." We conclude that the Commission did not abuse its discretion when it denied a hearing on the issue of bias.

¶25    As the Commission noted, the 2013 performance audit cannot support a conclusion that Dr. Jarvis is biased against injured workers generally or against Petitioner specifically. Dr. Jarvis is not named in the report, and Petitioner merely assumes that he must be one of the doctors referred to because he is also a medical panel chair. Moreover, the performance audit did not definitively state that the two occupational medical panel chairs were actually biased; it simply voiced a concern that ties to an insurance company "may lead some to question" objectivity. Like the Commission, we decline to infer that specific bias exists in this case from a general audit report that does not identify the referenced doctors and only raises a question about the potential

for bias. *See Johnston v. Labor Comm'n*, 2013 UT App 179, ¶ 20, 307 P.3d 615 (declining to find that the sole member of the medical panel was biased where petitioner "merely speculates that there are legitimate questions" as to the member's "ability to render a neutral opinion" and does not explain why the evidence cited as proof "has any bearing" on the member's ability to be objective (internal quotation marks omitted)).

¶26    In addition, Petitioner's reliance on *Blair* to support her allegation of bias against Dr. Jarvis is misplaced. *Blair* was not remanded because of medical panel bias. Rather, *Blair* was remanded for "additional findings" because we determined that the Commission's findings regarding "Blair's factual challenge" to the medical panel report were inadequate to permit meaningful review. 2011 UT App 248, ¶¶ 20–23. Thus, *Blair* does not support Petitioner's contention that "Dr. Jarvis has established a pattern of ignoring evidence that favors the injured worker." Moreover, Petitioner has failed to point to any fact— other than the medical panel's causation conclusion—that demonstrates actual bias in her case.

¶27    In sum, we conclude that the Commission did not abuse its discretion when it denied an objection hearing to resolve the issues surrounding the MMI date and causation, alleged deficiencies in certain medical opinions, and potential bias of the medical panel chair.

## II. Admissibility of the Medical Panel Report

¶28    Because we have decided that the Commission did not abuse its discretion by refusing to remand for a hearing on Petitioner's objections to the medical panel report, "the medical panel report's admissibility will turn on whether the [Petitioner's] objection to the report is well taken" or not. *Johnston*, 2013 UT App 179, ¶ 33. An objection is well taken if "no amount of supporting testimony [can] overcome the report's glaring deficiencies." *Id.* ¶ 30. An objection is not well taken if

the claims do not have "any tangible support in the record" or if the "grounds for the objection have no merit." *Id.* ¶ 31. And if it is "obvious" from the order denying the hearing that the objection regarding the medical panel report is "not well taken," the "report will be treated as if no objection had been made" and will be "admitted into evidence." *Id.* ¶ 30. Petitioner argues that her objections were well taken because of alleged deficiencies in the medical panel report and the medical records relied on to make determinations regarding her entitlement to disability benefits, and because of the potential bias of the medical panel's chair. For the same reasons discussed above, we disagree and conclude that Petitioner's objections were not well taken.

¶29 First, Petitioner's objection to the medical panel report on the basis of the MMI error has no merit. As discussed above, the Commission determined that notwithstanding conflicting evidence regarding medical causation, the medical panel report's MMI finding was "not a material misstatement of fact . . . because other substantial evidence preponderate[d] to show that she was medically stable from her work injuries prior to her cervical-spine surgery." Thus, the MMI error in the medical panel report did not affect the Commission's ultimate conclusion that Petitioner reached MMI prior to her 2011 surgery. Accordingly, this objection is not well taken. *See Johnston*, 2013 UT App 179, ¶ 30.

¶30 Second, Petitioner's argument that the medical reports relied upon by the panel (and, later, the Commission) were glaringly flawed also lacks merit. As discussed above, Petitioner's arguments ultimately go to the weight and the credibility of the various medical opinions, which are squarely within the Commission's role to resolve as ultimate fact-finder. Petitioner has not shown that the medical opinions she contests could not constitute substantial evidence to support a causation conclusion. Nor has Petitioner demonstrated that Dr. Humpherys's report is the one unflawed report that should have

been relied upon to the exclusion of the other doctors' reports. Accordingly, this objection is not well taken. *See id.*

¶31    Finally, Petitioner's objection to the medical panel report on the basis of bias is also not well taken. As the Commission noted, Petitioner's contention was "mere[] speculation" based on inferences from a legislative performance audit, and Petitioner failed to point toward any actual evidence of bias in her case. Accordingly, this objection finds no support in the record. *See id.*

¶32    Thus, because we conclude that the bases for Petitioner's objections are not supported by the record and have no merit, the objections were not well taken. *See id.* ¶ 31. Therefore, the Commission properly admitted the medical panel report "as if no objection had been made." *See id.*

CONCLUSION

¶33    An administrative law judge has discretion to choose whether to hold a hearing when an objection is timely filed to a medical panel report. We will not disturb that decision unless "there is no reasonable basis for the decision apparent in the record." In this case, the record indicates that the Commission acted within its discretion by denying a hearing based on glaring deficiency and potential bias. In addition, because Petitioner's objections to the medical panel report were not well taken, it was not error to admit the report. Consequently, we decline to disturb the Commission's order.

————————