2023 UT App 130

## THE UTAH COURT OF APPEALS

THERESA R. GIRON,
Petitioner,

*v.*

LABOR COMMISSION, BLACK DIAMOND EQUIPMENT,
AND WORKERS' COMPENSATION FUND,
Respondents.

Opinion
No. 20220342-CA
Filed November 2, 2023

Original Proceeding in this Court

Loren M. Lambert, Attorney for Petitioner

Hans M. Scheffler, Attorney for Respondents
Black Diamond Equipment and
Workers' Compensation Fund

JUDGE AMY J. OLIVER authored this Opinion, in which JUDGES
GREGORY K. ORME and MICHELE M. CHRISTIANSEN FORSTER
concurred.

OLIVER, Judge:

¶1 In April 2017, Theresa R. Giron injured her back at work. A few months later, Giron was diagnosed with a degenerative disc disorder that had been aggravated by the workplace accident. Initially, Giron's medical bills for the injury were paid by her employer, Black Diamond Equipment (Black Diamond), and its insurance carrier at the time of the accident, Workers' Compensation Fund (WCF; collectively, Respondents). Respondents stopped paying on Giron's claim several months later, and nearly two years after that, Giron initiated a formal adjudicative proceeding against Respondents through the Utah Labor Commission (the Commission) for medical expenses and lost wages. The administrative law judge (the ALJ) dismissed the

case after a medical panel opined that Giron had reached maximum medical improvement (MMI) by the end of 2017. On review, the Appeals Board of the Commission (the Board) set aside the ALJ's order and issued an order of remand. On remand, the ALJ awarded Giron medical and compensation benefits, and Respondents sought review. After referring the matter back to the medical panel, the ALJ awarded Giron past medical expenses but denied recommended medical care, and the Board affirmed. Giron now seeks judicial review of the Commission's decision. We conclude that the Board had substantial evidence to support its conclusion, Giron's claim of the medical panel's impartiality is procedurally barred, and the ALJ's evidentiary rulings were not an abuse of discretion. Accordingly, we decline to disturb the Commission's decision.

BACKGROUND[1]

*Work Injury and Initial Treatment*

¶2 Giron's job at Black Diamond entailed fulfilling customer orders by pulling items—ranging from skis to gloves—off the shelves at a warehouse and scanning them. During a shift in April 2017, Giron was pulling an "old" and "worn" cardboard box weighing approximately fifty pounds with six pairs of skis in it from a middle shelf at waist level. Giron had to twist her body to pull the long box free from the shelf. She then let it fall to the ground because it was too heavy for her to carry. When Giron bent over to pick up one end of the box and drag it to a cart, she felt pain in her back that radiated down the right side of her leg. The next day, Giron reported a complaint of lower back pain to Intermountain WorkMed (WorkMed). The WorkMed doctor

---

1. "In reviewing an order from the Commission, we view the facts in the light most favorable to the Commission's findings and recite them accordingly." *JBS USA v. Labor Comm'n*, 2020 UT App 86, n.1, 467 P.3d 905 (cleaned up).

diagnosed Giron with a lumbar strain, prescribed a muscle relaxant, and placed Giron on the following work restrictions: "no lifting more than 10 pounds, minimal bending at the waist, and change positions as necessary."

¶3     Over the next several months, the WorkMed doctor reduced Giron's work restrictions and recommended Giron continue to do her home exercises and use ice and heat. In early June, WorkMed requested an MRI, and in August, Giron was seen by the doctor recommended by WorkMed, Richard Hurst, MD who used the MRI to diagnose Giron with a degenerative back condition. Dr. Hurst discussed surgical options and recommended injections; Giron elected not to get the injections at that time.

¶4     In November, Giron's claim was "denied as noncompensable" and Respondents stopped paying Giron's medical expenses related to the workplace injury.

*Formal Adjudicative Proceedings*

¶5     In June 2019, almost two years after the ALJ denied Giron's claim, Giron initiated a formal adjudicative proceeding against Respondents, seeking medical expenses related to her workplace injury and lost wages.[2] Giron and WCF submitted reports by their respective experts to the ALJ. Giron's expert, Jeffrey F. Clayton, DC, opined that Giron's "mechanism of injury is related to her current medical conditions . . . which play a role in her current condition." Zoran Maric, MD, submitted a medical report opining that "Giron has subjective pain complaints and no objective findings to substantiate those complaints." Dr. Clayton opined Giron was at MMI in July 2018 and Dr. Maric placed Giron's MMI in May 2017.

---

2. Giron later added a claim for repetitive trauma in her work from 2014 to 2017.

¶6 Before the evidentiary hearing was held, Respondents filed a motion in limine to prevent Dr. Clayton from testifying. The ALJ granted the motion, reasoning that Giron had "not provided sufficient justification as to why the [c]ourt would need to hear" the expert's "testimony, rather than rely on his opinion in the [medical records exhibit]" as is the custom in such proceedings.

¶7 At the December 2019 evidentiary hearing, Giron asked the ALJ to strike the following statement in Dr. Maric's report: "Giron does not appear to be happy with her employer. She expressed significant dissatisfaction that she was not provided help to lift these large ski boxes. Medical studies have shown that dissatisfied employees file workers' compensation claims much more often than satisfied employees." Giron argued this statement cast doubt on her credibility and should be stricken for being prejudicial and unreliable. The expert's full, unredacted report was admitted into the record.

¶8 In January 2020, the ALJ referred the disputed medical issues to a medical panel, appointing Jeremy Biggs, MD as its chair and directing him to "select the specialists" to assist in his evaluation.[3] *See* Utah Admin. Code R602-2-2; Utah Code § 34A-2-601. In February, Giron sent a letter to the ALJ, requesting that none of the medical panel members have association with "NIOSH, Rocky Mountain Center for Occupational and Environmental Health, PEHP, any workers' compensation or disability insurance provider or any provider who performs defense medical evaluations."[4] Giron did not include any

---

3. In May, Dr. Biggs selected Melissa Cheng, MD, and Erik Natkin, MD, as panelists for the medical panel.

4. NIOSH, the National Institute for Occupational Safety and Health, is "part of the Centers for Disease Control and Prevention, in the Department of Health and Human Services." *About NIOSH*,

(continued…)

supporting exhibits or evidence in the single-page letter. The ALJ denied Giron's unsupported request, concluding that it had "no basis in fact or law" and was merely "speculative."

*First Medical Report*

¶9    In its initial report, the medical panel opined that Giron "suffered an acute exacerbation of her chronic underlying lumbar degenerative disease due to lifting and twisting of heavy objects on the day of the industrial accident." The panel agreed with Dr. Hurst's diagnosis that Giron had "severe facet joint arthritis" that caused "'severe' degenerative disc disease" and opined that these conditions existed before the "lifting injury . . . but having them present contributed to the pain" Giron was experiencing. The panel also agreed with Dr. Hurst's recommended injections. The report went on to agree that the doctor visits, MRI, physical therapy, and medications Giron received until the end of December 2017 were necessary and "reasonably related to the injury."

¶10    The medical panel filed its report with the ALJ in July 2020 without objection. The ALJ issued findings of fact and conclusions of law, finding legal causation for Giron's repetitive trauma claim from 2014 to 2017 but not for her workplace injury. The ALJ found no medical causation, however, concluding that Giron "has failed to show by a preponderance of the evidence that her repetitive work activities medically caused her industrial injury," and dismissed the case with prejudice.

---

Centers for Disease Control and Prevention, https://www.cdc.gov/niosh/about/default.html#:~:text=NIOSH% 20is%20part%20of%20the,industrial%20hygiene%2C%20safety% 2C%20etc [https://perma.cc/Z8BE-T24Q]. PEHP, the Public Employees Health Program, is a Utah insurance provider. *See PEHP Health & Benefits*, PEHP, https://www.pehp.org/ [https://perma.cc/ER5T-X3MY].

¶11    Giron filed a motion for review. The Board conducted a "totality of the circumstances" analysis of Giron's "employment activity" as required by the Utah Supreme Court, *see Murray v. Utah Labor Comm'n*, 2013 UT 38, ¶¶ 47–48, 308 P.3d 461, and concluded that Giron meets "the more stringent standard of legal causation given the unusual or extraordinary exertion involved in the work activity that precipitated her work injury." Having established legal causation for her workplace injury, the Board remanded the matter for further proceedings.

¶12    The ALJ then issued findings of fact, conclusions of law, and an order on remand, in which the ALJ found legal but not medical causation for the repetitive trauma claim, dismissing that claim with prejudice. The ALJ awarded medical expenses for the care Giron received to treat her workplace injury, including the "MRI in July 2017" and "doctor visits, physical therapy and medications until the end of December 2017." The ALJ then awarded the "recommended medical care" of injections and "ongoing temporary total disability compensation until medical stability is reached."

¶13    WCF then filed a motion for review. The Board concluded there was both legal and medical causation, affirmed the total disability award, and remanded for clarification about whether the medical care awarded by the ALJ was for Giron's work injury or her underlying condition. The ALJ, in turn, referred the matter back to the medical panel for clarification on whether and when Giron's injuries had "become medically stable" and "regarding its statements on necessary medical care."

*Second Medical Report*

¶14    The medical panel provided an addendum to its initial report that stated, "It is our medical opinion that the acute exacerbation that occurred on 4-13-2017 in relation to [Giron's] work injury [was] medically stable by 12-31-2017. The recommended injections we discussed were for treatment of her

underlying spine disease and not her original injury." The report also opined that no future medical care is "reasonably necessary to treat [Giron's] industrial conditions, including medications." Giron filed an objection to this report.

¶15    The ALJ again issued findings of fact, conclusions of law, and an order on remand. The ALJ dismissed Giron's claims for temporary total disability and for recommended medical care with prejudice, but granted Giron's medical expenses claim. Respondents were ordered to pay Giron her "compensable historical medical expenses" including "doctor visits, physical therapy and medications until the end of December 2017" and "the lumbar MRI in July 2017."

¶16    Giron filed her second motion for review, alleging bias of the medical panel and attaching hundreds of pages of exhibits relating to that claim. On review, the Board denied Giron's request to submit additional evidence "purportedly related to allegations of bias against the medical panel members," explaining that "the evidentiary record closed [over two years ago] at the conclusion of the hearing on [Giron's] claim." The Board went on to agree with the ALJ's "decision to assign more weight to the panel's opinion" about whether Giron had reached medical stability and stated that "the panel's conclusions are the product of a thorough and well-reasoned consideration of all of [Giron's] relevant medical records." And thus the Board "concur[red] with [the ALJ's] award of benefits to [Giron] consistent with the panel's opinion regarding necessary medical care to treat her temporary work injury."

ISSUES AND STANDARDS OF REVIEW

¶17    First, Giron asks us to determine whether the Board's findings of fact and conclusions of law regarding medical causation and the mechanism of her injury are supported by substantial evidence. "[A] challenge to an administrative agency's

finding of fact is reviewed for substantial evidence." *Provo City v. Utah Labor Comm'n*, 2015 UT 32, ¶ 8, 345 P.3d 1242. Because it is "well settled that causation questions . . . are factual in nature, not legal in nature," *Hospital Housekeeping Sys. v. Labor Comm'n*, 2023 UT App 90, ¶ 24, 535 P.3d 409, we review this issue "under the substantial evidence standard of review, examining the whole record to determine whether a reasonable mind might accept as adequate the evidence supporting the decision," *Quast v. Utah Labor Comm'n*, 2017 UT 40, ¶ 15, 424 P.3d 15 (cleaned up).

¶18　Next, Giron challenges the impartiality of the medical panel, as set forth in the Workers' Compensation Act. "The interpretation of a statute is a question of law that we review for correctness." *Gamez v. Utah Labor Comm'n*, 2022 UT 20, ¶ 29, 511 P.3d 1145.

¶19　And finally, Giron challenges two evidentiary rulings: first, Giron argues the ALJ erred in admitting into evidence Dr. Maric's comments about Giron's credibility; second, Giron argues the ALJ erred in refusing to allow Giron's expert to testify in person. We review an agency's decisions to include or exclude evidence "under an abuse of discretion standard, providing relief only if a reasonable basis for that decision is not apparent from the record." *Bade-Brown v. Labor Comm'n*, 2016 UT App 65, ¶ 8, 372 P.3d 44 (cleaned up).

ANALYSIS

I. Medical Causation and Mechanism of Injury

¶20　Under Utah law, "an employee who is injured 'by an accident arising out of and in the course of the employee's employment' shall be recompensed for medical costs." *Petersen v. Labor Comm'n*, 2016 UT App 222, ¶ 17, 385 P.3d 759 (cleaned up) (quoting Utah Code § 34A-2-401(1)(b)(i)). An injury is compensable if the workplace accident is both "the legal cause

and the medical cause of the injury." *Id.* Under "the legal-cause prong," a claimant "must show that the injury arose out of or in the course of employment or, if a claimant has a preexisting condition, the claimant must show that the employment contributed something substantial to increase the risk [the claimant] already faced in everyday life because of [their] condition." *Id.* (cleaned up). Medical causation requires "a nexus between the accident and the injury for which treatment is sought." *Id.* ¶ 18.

¶21 Giron asserts that medical causation was established by the medical panel's findings that Giron "suffered an acute exacerbation of her chronic underlying lumbar degenerative disease due to lifting and twisting of heavy objects on the day of the industrial accident." Respondents do not challenge the fact that Giron "sustained a sprain/strain injury caused by the temporary aggravation of her significant preexisting low back condition." Indeed, the Commission awarded Giron "compensable historical medical expenses" for the care she received to treat the workplace injury, including "doctor visits, physical therapy and medications until the end of December 2017" and "the lumbar MRI in July 2017."

¶22 What is in dispute, then, is whether Giron's continuing pain and request for medical benefits can still be traced to the workplace injury or if she is suffering only from the underlying condition that predated her injury. To answer this, the Board remanded the matter, for the second time, to the ALJ for clarification "from the medical panel regarding its statements on necessary medical care" going forward. In response, the panel opined that "the acute exacerbation that occurred on 4-13-2017 in relation to [Giron's] work injury [was] medically stable by 12-31-2017. The recommended injections we discussed were for treatment of her underlying spine disease and not her original injury." The report also concluded that no future medical care is "reasonably necessary to treat [Giron's] industrial conditions,

including medications." Accordingly, the ALJ concluded that Giron had reached medical stability by December 2017 and dismissed her recommended medical care claim. Thus, medical causation for Giron's past medical expenses related to her workplace injury was established, but not for the recommended medical care related to her underlying degenerative condition.

¶23 In *Morris v. Labor Commission*, 2021 UT App 131, 503 P.3d 519, *cert. denied*, 509 P.3d 768 (Utah 2022), we addressed similar facts where a worker's degenerative disc condition was aggravated by an industrial accident. *Id*. ¶ 1. We found the Commission's decision awarding temporary benefits to be supported by substantial evidence and accordingly declined to disturb it, noting, "as a preliminary matter," that a "medical panel's report alone can be enough to conclude that the Commission's determination was supported by substantial evidence." *Id*. ¶¶ 1, 17 (cleaned up). "After all, the [Workers' Compensation Act] expressly permits the Commission to base its findings on a medical panel's report," so "if the Commission's decision is supported by the medical panel reports, the substantial evidence standard is satisfied." *Id*. ¶ 17.

¶24 Similarly here, the Board's findings related to Giron's recommended medical care follow the medical panel's opinion. In its initial report, the medical panel concluded that Giron "suffered an acute exacerbation of her chronic underlying lumbar degenerative disease due to lifting and twisting of heavy objects on the day of the industrial accident." Then, on remand, the panel indicated that the effects of the exacerbation were no longer evident and Giron was "medically stable" by the end of 2017. Although Giron still had ongoing health issues, the panel attributed her symptoms to her degenerative disc disease. The Board's findings in its final decision align with these conclusions. Accordingly, "the substantial evidence standard is satisfied." *See id.*

## II. Impartiality of the Medical Panel

¶25  Giron next challenges the reliability of the medical panel's addendum report because two of the panelists, Dr. Biggs and Dr. Cheng, are affiliated with the Rocky Mountain Center of Occupational and Environmental Health (Rocky Mountain) and Giron claims "their impartiality can be reasonably questioned." Although Giron filed a letter requesting that none of the panelists be affiliated with, among other entities, Rocky Mountain, the letter did not state a basis for the request and was unaccompanied by any evidence. The ALJ denied the request, concluding that it "ha[d] no basis in fact or law and instead, appears to be speculative."

¶26  The medical panel produced two reports in this matter—its initial report and its addendum report. Giron raised no objections to the initial report. It was only after the panel's addendum report opined that Giron had reached medical stability in December 2017 that Giron challenged the panel's impartiality. Giron attached over 400 pages of exhibits to her second motion for review and alleged there is a "tight social and financially enmeshed business operation and relationship between the WCF and Drs. Biggs and Cheng and their employer [Rocky Mountain]." The Board appropriately declined to consider this evidence, however, because the evidentiary record had closed over two years earlier.

¶27  In *Wright v. Labor Commission*, 2021 UT App 43, 489 P.3d 211, the injured worker similarly waited until his second motion for review to raise concerns about the medical panel's impartiality and this court ruled that the issue "was untimely and improperly raised." *Id*. ¶ 16. As in *Wright*, "we cannot reach the issue here," *see id*., because the evidence supporting the claim was submitted two years too late and only in response to the panel's second report.

¶28 In her reply brief, Giron acknowledges she filed her objection too late, but she seeks review under the "exceptional circumstances" exception to our preservation rules. *See State v. Johnson*, 2017 UT 76, ¶ 19, 416 P.3d 443 (recognizing that Utah law allows "three distinct exceptions to preservation: plain error, ineffective assistance of counsel, and exceptional circumstances"). This exception is intended to remedy a situation in which "a rare procedural anomaly has either prevented an appellant from preserving an issue or excuses a failure to do so." *Id.* ¶ 29 (cleaned up). We are far from convinced that a belated filing constitutes the type of "rare procedural anomaly" the exceptional circumstances exception is designed to cover, especially when Giron voiced no objections to the medical panel when it issued its initial report. The makeup of the panel remained the same when it issued its addendum report; thus, Giron's objections to its impartiality—raised only after it produced unfavorable determinations—ring hollow.

¶29 Moreover, our supreme court has explained that the "exceptional circumstances doctrine is applied sparingly, reserving it for the most unusual circumstances where our failure to consider an issue that was not properly preserved for appeal would have resulted in manifest injustice." *Id.* (cleaned up). Giron lists six reasons she believes the exceptional circumstances exception should apply, but none approach what would be considered a "rare procedural anomaly" or a "most unusual circumstance[]." *Id*. In fact, the list merely amounts to grievances about the affiliation some of the medical panelists have with WCF, Rocky Mountain, etc.—the same grievances that show up in many recent labor commission cases, making them anything but anomalous. *See, e.g.*, *Gamez v. Utah Labor Comm'n*, 2022 UT 20, ¶¶ 37–53, 511 P.3d 1145; *Mitchell v. Labor Comm'n*, 2022 UT App 138, ¶¶ 16–21, 523 P.3d 198. Thus, Giron's claim on appeal that the medical panel was biased is unpreserved, and we decline to consider it further.

### III. Evidentiary Rulings

¶30   Finally, Giron challenges two evidentiary rulings made by the ALJ. First, Giron argues the ALJ erred in refusing to allow Giron's expert to testify in person. Second, Giron argues the ALJ erred in admitting into evidence Dr. Maric's comments about Giron's credibility.

¶31   As noted earlier, we review an agency's decisions to include or exclude evidence "under an abuse of discretion standard, providing relief only if a reasonable basis for that decision is not apparent from the record." *Bade-Brown v. Labor Comm'n*, 2016 UT App 65, ¶ 8, 372 P.3d 44 (cleaned up). The question, then, is whether the ALJ had a "reasonable basis" for these evidentiary rulings. *Id.* (cleaned up). We conclude that he did.

¶32   The rules of evidence and procedure before a commission differ from "the usual common law or statutory rules of evidence" and the commission is "not bound" by them. Utah Code § 34A-2-802(1). "The commission may receive as evidence and use as proof of any fact in dispute all evidence considered material and relevant" and "may exclude evidence that is irrelevant, immaterial, or unduly repetitious." *Id*. § 34A-2-802(2), *id*. § 63G-4-206(1)(b)(i).

¶33   When the ALJ denied Giron's motion to allow her expert to present live testimony, he explained that "[a]llowing Dr. Clayton to testify could distract the [c]ourt from his opinion in the Medical Records Exhibit [the MRE] and would be procedurally unfair for opposing parties' expert witness." Moreover, Giron "ha[d] not provided sufficient justification as to why the [c]ourt would need to hear Dr. Clayton's testimony, rather than rely on his opinion in the MRE." Thus, the ALJ provided a "reasonable basis" for the decision to exclude live testimony—it would be duplicative, unfair, and distracting—and we will not disturb that decision. *See Bade-Brown*, 2016 UT App 65, ¶ 8.

¶34   Likewise, the Board provided a "reasonable basis" for admitting the entirety of Dr. Maric's report, including statements Giron claims amount to a "credibility test." The Board explained that the "[c]onflicting medical opinions from the parties' medical providers and consultants were not accepted as conclusive or dispositive on their own, but such opinions were considered along with the other evidence submitted. . . . [A]nd the subjective aspects are assigned appropriate weight based on the preponderance of the evidence." Accordingly, admitting Dr. Maric's unredacted report was not an abuse of discretion.

CONCLUSION

¶35   We conclude that the Board had substantial evidence to support its conclusion, that the issue of the medical panel's impartiality is procedurally barred, and that the evidentiary rulings were within the Commission's discretion. Accordingly, we decline to disturb its decision.

———————