**2022 UT App 138**

# THE UTAH COURT OF APPEALS

RIVERS MITCHELL,
Petitioner,

*v.*

LABOR COMMISSION, FTA TRANSPORT LLC, AND BENCHMARK
INSURANCE CO.,
Respondents.

Opinion
No. 20210704-CA
Filed December 8, 2022

Original Proceeding in this Court

Jared L. Mortenson, Attorney for Petitioner

Chad P. Curtis and Mark D. Dean, Attorneys for
Respondents FTA Transport LLC and Benchmark
Insurance Co.

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and RYAN D. TENNEY
concurred.

MORTENSEN, Judge:

¶1     Rivers Mitchell sought workers' compensation benefits
after injuring his knee while delivering packages. At a certain
point in the proceedings, the Labor Commission (Commission)
rejected Mitchell's objection that one of the medical panel
members was not impartial, determining that Mitchell had not
shown "actual bias." Because the Commission applied the wrong
standard in this respect, we set aside the Commission's decision
on this issue and instruct the Commission to revisit the matter.

BACKGROUND[1]

¶2      Mitchell worked for FTA Transport LLC, whose workers' compensation carrier is Benchmark Insurance Co. (collectively, FTA). While delivering a package in January 2019, Mitchell slipped on ice and twisted his right knee while falling to the ground.

¶3      Mitchell received treatment for injuries related to his fall and was first diagnosed with a right knee sprain. Later, a physician (Dr. Novak) diagnosed Mitchell with a meniscal tear—based on an MRI—and recommended surgery to address it. The surgery revealed no tear, but Dr. Novak found patellofemoral arthritis and "a flap[,] as well as what appeared to be a striation within the cartilage." He also noted that "[t]his all appeared to be a relatively acute change of the cartilage." Dr. Novak "used a shaver to debride the cartilage lesion back to a stable base." Following surgery, Mitchell developed a significant blister on the knee, which was treated.

¶4      At the request of FTA, another doctor (Dr. Mattingly) evaluated Mitchell in June 2019. This doctor determined that Mitchell suffered a "[r]ight knee strain with temporary aggravation of [his] preexisting patellofemoral arthritis" due to the fall and that Mitchell had reached medical stability as of June 20, 2019. While Mitchell complained of ongoing knee problems, Dr. Mattingly opined that these complaints were unrelated to the accident and entirely due to Mitchell's preexisting patellofemoral arthritis, noting, "No further treatment is warranted with respect to the work incident of January 12, 2019. While . . . Mitchell may benefit from further workup and treatment, such as an MR

_____

1. Owing to the manner in which we resolve this review of the Commission's order, we limit our recitation of the facts to the relevant matters.

arthrogram of the right knee, this would be necessitated by pre-existing conditions and not the industrial injury."

¶5    Mitchell then sought an opinion from yet another doctor (Dr. Murray). Relying on the previous MRI, Dr. Murray diagnosed Mitchell with degenerative joint disease and a meniscal tear. Apparently unaware of the nature of the previous surgery, Dr. Murray recommended right knee arthroscopy to repair the tear, a partial meniscectomy, and debridement for arthritis. Because Mitchell had already received this surgery, FTA declined to repeat it and discontinued further workers' compensation benefits.

¶6    Mitchell challenged this decision by applying for a hearing in July 2019. The administrative law judge (ALJ) referred the matter to a medical panel "to conduct an impartial evaluation of the medical aspects of [the] case." The medical panel, which consisted of Dr. Sean Biggs and Dr. Don Schmidt, issued its first report on May 6, 2020, concluding that the "industrial accident most likely caused an acute exacerbation of his pre-existing patellofemoral degenerative condition," that Mitchell reached medical stability by June 27, 2019, and that Mitchell's "current pain complaints in the right knee are most likely not related to the work injury . . . [but] are most likely a result of his pre-existing patellofemoral degenerative condition."

¶7    Mitchell filed an objection to the medical panel report, disputing the panel's "conclusions that [his] condition [was] an exacerbation of a *chronic* condition" and that the work-related injury had resolved. The ALJ remanded the matter back to the panel, asking for a fuller explanation of how the panel had reached its medical stability conclusion. The panel returned a supplemental report addressing the inquiry, to which Mitchell reasserted his objections. The ALJ overruled Mitchell's renewed objections and issued findings of fact, conclusions of law, and an order in FTA's favor in September 2020.

¶8    Mitchell then sought review of the ALJ's order before the Commission. Among the arguments Mitchell raised was that the panel's opinions resulted from bias. Specifically, Mitchell alleged that Dr. Biggs was biased because he is "an occupational medicine doctor at a clinic whose mission statement is to 'reduce your insurance and lost labor costs and save your company money.'" (Cleaned up.) Mitchell argued that this "objective runs directly counter to the purpose of a medical panel in an injured worker's case" and that it was "entirely inappropriate for a doctor with such a biased objective to serve on a medical panel."

¶9    The Commission remanded a portion of the ALJ's order for "a more complete explanation from the medical panel regarding the date [Mitchell] reached medical stability from his work injuries and why it identified such date based on the specific evidence in the record."

¶10    Critical for our analysis, the Commission rejected—along with the remainder of Mitchell's complaints—his argument that the panel was biased. Specifically, the Commission stated,

> As a preliminary matter, the [Commission] rejects [Mitchell's] assertion as speculative that Dr. Biggs was biased against him and in favor of FTA in this case. [Mitchell] refers to the mission statement at the clinic where Dr. Biggs practices as indicative of bias in favor of employer and against injured workers. The statement provides that the clinic aims to "reduce your insurance and lost labor costs and save your company money." The [Commission] does not agree with [Mitchell] that such statement evinces a bias in favor of employers, as proper and prompt medical treatment for injured workers—honorable goals for any medical provider—would reduce insurance and lost labor costs. Even if the clinic's mission statement could be construed as pro-

employer, there is no indication beyond [Mitchell's] speculation that Dr. Biggs himself favors employers over injured workers and no evidence of *actual bias* in this case. Dr. Biggs has served on many medical panels over several years and has not demonstrated any pattern of bias for or against a particular side.

(Emphasis added.)

¶11    Pursuant to the Commission's order, the ALJ remanded the matter back to the panel for additional explanation regarding the date of medical stability. Mitchell objected, saying that the panel had already answered this question. And he reasserted his argument that Dr. Biggs was biased, stating that "[i]njured workers are entitled to complete, fair, and legitimate review of their cases."

¶12    After receiving the panel's second supplement to its report, Mitchell "reassert[ed] his continuing objection to the appointment of Dr. Biggs to this or any medical panel on the grounds of the repeated inadequacy of his reviews and his clear historical bias and conflicting interest." Mitchell also pointed to Dr. Biggs's "extensive work history for employers, the mission statement of his associated clinic," and that clinic's receipt of "considerable donations from at least one workers compensation carrier" as evidence of bias.

¶13    The ALJ issued its second findings of fact, conclusions of law, and order. In doing so, the ALJ rejected Mitchell's objections. As relevant here, the ALJ recognized that the Commission "found no evidence of actual bias in this case," making Mitchell's renewed objection in this respect "not an issue" for the ALJ. The ALJ ordered that Mitchell receive the remainder of his temporary partial disability benefits accrued before June 2019 but dismissed with prejudice his other claims.

¶14 Mitchell again sought the Commission's review of the ALJ's order. Once again, Mitchell asserted, among other complaints, his allegation of bias. In August 2021, the Commission upheld the ALJ's order, specifically noting that Mitchell's "allegation of bias against the medical panel" had "already been addressed . . . in its prior decision." Mitchell now seeks judicial review of the Commission's decision.

## ISSUE AND STANDARD OF REVIEW

¶15 We consider on review whether the medical panel's report should have been admitted given Mitchell's allegation that Dr. Biggs was not impartial. "A challenge to an administrative agency's findings of fact is reviewed for substantial evidence. We review the law applied to those facts for correctness." *Gamez v. Utah Labor Comm'n*, 2022 UT 20, ¶ 23, 511 P.3d 1145 (cleaned up).[2]

## ANALYSIS

¶16 There is no question that the Commission rejected Mitchell's claim of bias on the basis that there was no indication of "actual bias" on the part of Dr. Biggs. As our supreme court has

---

2. Mitchell also asserts that the Commission erred in (1) adopting the medical panel's diagnosis that the accident only aggravated a pre-existing condition, (2) adopting the medical panel's opinion that Mitchell had reached maximum medical improvement in June 2019, (3) terminating his compensation when his condition was worsened by the surgery, and (4) terminating his compensation before he returned to his pre-injury baseline. Because these issues depend on the Commission's use of the medical panel's report, we are unable to address them—indeed, it would be pointless to do so—until the threshold question of bias is properly resolved by the Commission.

recently clarified, "the heightened 'actual bias' standard does not comport with the Workers' Compensation Act." *Gamez v. Utah Labor Comm'n*, 2022 UT 20, ¶ 25, 511 P.3d 1145. Rather, the standard is whether "a medical panelist's impartiality could reasonably be questioned." *See id.* ¶ 50. And "where a medical panelist's impartiality could reasonably be questioned, the statutory requirement for an impartial medical evaluation has not been met." *Id.* ¶ 25.

¶17 The Utah Code provides that "the medical aspects" of a workers' compensation case may be referred "to a medical panel appointed by an administrative law judge." *See* Utah Code Ann. § 34A-2-601(1)(a) (LexisNexis Supp. 2022). In interpreting this statute, our supreme court observed that section 601 "does not explicitly require that the members of a medical panel be impartial." *Gamez*, 2022 UT 20, ¶ 38. However,

> [w]hile there is no direct language in section 601 establishing such a requirement, it can be inferred from the use of "impartial" in subsection 601(1)(d),[3] which grants the adjudication division the authority to "employ a medical director or one or more medical consultants" as "an alternative method of obtaining an *impartial medical evaluation* of the medical aspects of a controverted case" if certain conditions are met.

*Id.* ¶ 39.

---

3. Around the same time *Gamez v. Utah Labor Commission*, 2022 UT 20, 511 P.3d 1145, was issued, subsection 601(1)(d) was redesignated as subsection 601(1)(e). *Compare* Utah Code Ann. § 34A-2-601(1)(d) (LexisNexis 2019), *with id.* § 34A-2-601(1)(e) (Supp. 2022).

¶18 In reaching this conclusion, the court noted that the Commission had "routinely" rejected "claims of bias or conflict of interest against physicians serving on medical panels . . . by finding [that] a potential for bias [is] 'insufficient grounds for disqualification,' and holding that parties must offer evidence of 'actual bias' to successfully challenge a medical panel appointment." *See id.* ¶ 42. In spite of the Commission's routine use of the "actual bias" standard, the court explicitly rejected the approach. *See id.* ¶ 25.

¶19 Our supreme court held that

> imputing an actual bias standard to the statutory text overlooks a key component of the plain meaning of impartial. . . . To assess whether an individual is impartial, one must also assess whether they are disinterested—in other words, whether they are free from a conflict of interest. And a conflict of interest includes both a real *or seeming* incompatibility between one's private interests and one's public or fiduciary duties.

*Id.* ¶¶ 47–48 (cleaned up).

¶20 Consequently, the court disavowed the "actual bias" standard and adopted the following standard for assessing bias:

> [I]n keeping with the statute, all physicians appointed to medical panels must be "impartial" in order to provide an "impartial medical evaluation." And recognizing the scope of the term "impartial," we hold that where a medical panelist's impartiality could reasonably be questioned, the statutory requirement for an impartial medical evaluation has not been met.

*Id.* ¶ 50. Given this newly promulgated standard, the Commission clearly erred in applying the "actual bias" standard to Mitchell's claim against the impartiality of the medical panel.

¶21 Because our supreme court has "clarified the standard for evaluating an objection to a medical panelist based on an alleged conflict of interest," we set aside the Commission's decision rejecting Mitchell's claim of bias and instruct the Commission "to consider [Mitchell's] objection under this clarified standard." *See id.* ¶ 53. We acknowledge, and FTA conceded at the oral argument, that should the Commission determine that the medical panel included a physician whose impartiality could reasonably be questioned, a new medical panel may need to be appointed and the entirety of the proceedings revisited.

## CONCLUSION

¶22 We set aside the Commission's decision rejecting Mitchell's claim of bias and instruct the Commission to consider Mitchell's claim of bias under the newly articulated standard set forth in *Gamez. See id.* ¶ 50.

———