2013 UT App 193

## THE UTAH COURT OF APPEALS

SCOTT CARNAGIE,
Petitioner,
*v.*
WORKFORCE APPEALS BOARD, DEPARTMENT OF WORKFORCE
SERVICES, AND BRICK OVEN–PROVO, LLC,
Respondents.

Memorandum Decision
No. 20120258-CA
Filed August 1, 2013

Original Proceeding in this Court

Christopher D. Greenwood, Attorney for Petitioner
Amanda B. McPeck, Attorney for Respondent
Workforce Appeals Board, Department of
Workforce Services
Michael W. Spence and Jonathan G. Pappasideris,
Attorneys for Respondent Brick Oven–Provo, LLC

JUDGE WILLIAM A. THORNE JR. authored this Memorandum
Decision, in which JUDGES STEPHEN L. ROTH
and MICHELE M. CHRISTIANSEN concurred.

THORNE, Judge:

¶1     Scott Carnagie seeks judicial review of a decision of the
Workforce Appeals Board (the Board) affirming the denial of his
claim for unemployment benefits. We decline to disturb the
Board's decision.

¶2     Carnagie began working for Brick Oven–Provo, LLC or one
of its affiliates (collectively, Brick Oven) in 2000. New owners
purchased Brick Oven in 2008. At this time, Carnagie was a
regional manager overseeing multiple restaurants, and Brick Oven

offered him a 10% ownership share in the company's Provo restaurant if he would stay on with the new owners. This interest was to vest after a period of years. In December 2010, Brick Oven reassigned Carnagie to be the general manager of the Provo location.

¶3     On October 4, 2011, Brick Oven sent Carnagie an email asking him to respond to various allegations, including Carnagie's alleged failure to post and adhere to his work schedule as required by company policy. The email demanded that Carnagie provide Brick Oven with a copy of his schedule immediately and stated, "[We] will be monitoring this very closely. If you fail, in any[ ]way to adhere to this schedule, you will immediately be let go." On October 6, after consulting with his attorney, Carnagie informed Brick Oven that the issues regarding his work schedule had already been resolved; Brick Oven replied that same day that they had not been. On October 7, Brick Oven suspended Carnagie with pay for refusing to answer the prior allegations, giving him until October 10 to provide a response. On October 11, Carnagie attempted to return to work but was informed by Brick Oven that he should leave the premises and not return until he had responded to the allegations. On October 12, Brick Oven suspended Carnagie indefinitely and without pay until such time as it received Carnagie's responses.

¶4     On October 24, Brick Oven emailed Carnagie, stating, "We haven't heard anything from you over the past 10 days. We presume that you have resigned yourself and are unwilling to answer the allegations against you." In the email, Brick Oven stated its desire to "sit down with [Carnagie] and discuss a fair parting." Carnagie contacted his attorney, who directed him not to personally respond to the October 24 email. On October 26, Brick Oven emailed Carnagie and informed him that it was accepting his "voluntary resignation." Sometime at or near the end of October, Brick Oven received an email response from Carnagie's attorney, the exact date and contents of which are not in the record.

¶5     Carnagie filed for unemployment benefits on October 27, which the Department of Workforce Services denied. Carnagie appealed this decision to an Administrative Law Judge (ALJ), who affirmed the denial of benefits after a hearing at which both Carnagie and Jeff Creer, one of Brick Oven's new owners, appeared and testified. The ALJ made factual findings and concluded that Carnagie had voluntarily quit his employment when he failed to respond to Brick Oven's reasonable requests. The ALJ also concluded that Carnagie had quit without good cause and that it would not be contrary to equity or good conscience to deny him benefits. Carnagie appealed to the Board, which adopted the ALJ's findings and conclusions, made additional findings and conclusions, and again affirmed the denial of benefits.

¶6     Carnagie challenges the Board's denial of benefits on judicial review, arguing that he did adequately respond to Brick Oven's requests, that he did not voluntarily quit, that he should not be penalized for following his attorney's advice, and that equity and good conscience did require the payment of benefits. "Whether the [Board] correctly or incorrectly denied benefits is 'a traditional mixed question of law and fact.'" *Jex v. Labor Comm'n*, 2013 UT 40, ¶ 15 (quoting *Murray v. Labor Comm'n*, 2013 UT 38, ¶ 34). We apply a deferential standard of review to a mixed question of fact and law when it "does not lend itself to consistent resolution by a uniform body of appellate precedent" or when "the [factfinder] is in a superior position to decide it." *Id.* (citation and internal quotation marks omitted). "The [Board's] decision denying benefits is accordingly entitled to deference." *Id.* ¶ 16.

¶7     There is substantial evidence in the record to support the Board's ultimate determination that Carnagie failed to adequately respond to Brick Oven's requests and, as a result, voluntarily quit his employment. As of October 7, 2011, Carnagie was on notice that Brick Oven was not satisfied with his prior response and was requesting written statements about his work schedule and hours. However, it is undisputed that Carnagie did not personally respond to that request prior to Brick Oven's "accepting" his voluntary resignation on October 26.

¶8    Carnagie argues that he responded through his attorney as evidenced by Creer's admission at the hearing that Carnagie's attorney "sent something at the end of October." However, Carnagie did not put his attorney's response into the record, giving the ALJ and the Board no way of determining that it was actually responsive to Brick Oven's request and was not merely a further general denial of wrongdoing.[1] Further, Creer testified that the attorney's response came "after [Carnagie] stopped working for the company." Thus, there was no evidence before the Board that Carnagie had made a timely, satisfactory response through his attorney to Brick Oven's request prior to his termination.

¶9    Carnagie also challenges the Board's determination that he voluntarily quit. Rule R994-405-204(3) of the Utah Administrative Code states that "[i]f the claimant refused or failed to follow reasonable requests or instructions, and knew the loss of employment would result, the separation is a quit." Utah Admin. Code R994-405-204(3). Carnagie was suspended with pay on October 7, suspended without pay on October 11, and informed on October 24 that Brick Oven perceived that he had "resigned himself," all over Carnagie's refusal to respond to allegations that he was not posting and adhering to his work schedule as required by Brick Oven. In light of the eminent reasonableness of Brick Oven's request, Carnagie's failure to respond, and the clear implication that such failure would result in the loss of employment,[2] we see no basis upon which to disturb the Board's

---

1. We further note that, in administrative proceedings, "[w]hen a party is in possession of evidence but fails to introduce the evidence, an inference may be drawn that the evidence does not support the party's position." *See* Utah Admin. Code R994-508-109(9).

2. Carnagie was on notice as of Brick Oven's October 4 email that Brick Oven expected him to immediately provide a copy of his schedule to Brick Oven, to post and adhere to that schedule, and that failure to do so "in any[ ]way" would result in his termination.

(continued...)

conclusion that Carnagie "chose to disregard a reasonable request, knowing that discharge would result, rendering the separation a voluntary quit."

¶10    Next, Carnagie argues that the Board impermissibly determined that Carnagie should have disregarded his attorney's advice and personally responded to Brick Oven's request for information. We see no such determination by the Board. Rather, the Board concluded,

> [Carnagie] was certainly within his rights to request that his attorney assist him in responding to the allegations against him. However, once [Carnagie] was aware [Brick Oven] had not received communication from his attorney, [Carnagie] could have reasonably contacted [Brick Oven] to simply state that he was not resigning, but he was working with his attorney to resolve the situation. [Carnagie] did not do so and apparently did not instruct his attorney to do so. The Board finds that choice to be unreasonable under the circumstances . . . .

Thus, the Board determined only that Carnagie acted unreasonably in failing to communicate, either personally or through counsel, to inform Brick Oven that he was not voluntarily quitting after receiving notice that Brick Oven was interpreting his actions as a voluntary quit. The Board's determination in this regard is entitled to our deference, *see Jex*, 2013 UT 40, ¶ 15, and we decline to disturb it.

¶11    Carnagie's final challenge to the substance of the Board's decision is his argument that even if his departure was a voluntary

---

2. (...continued)
Brick Oven's election to apply progressive discipline—i.e., suspend Carnagie—in lieu of immediate termination did nothing to rescind this notice that termination would be the ultimate result if Carnagie failed to resolve his scheduling issues.

quit without good cause, equity and good conscience demand the payment of benefits. *See* Utah Admin. Code R994-405-103 (governing the allowance of benefits for reasons of equity and good conscience). In order for benefits to be allowed under the equity and good conscience standard, a claimant must have "acted reasonably," meaning "the decision to quit was logical, sensible, or practical." *Id.* R994-405-103(1)(a).

¶12 Carnagie argues that he acted reasonably in light of his reliance on his attorney and his concern that Brick Oven was attempting to deprive him of his unvested ownership interest in the Provo restaurant. However, the Board rejected these arguments, stating,

> [Carnagie] and the owners had a strained relationship, and, as acknowledged above, it was reasonable for [Carnagie] to request his attorney's assistance on the matter. However, as explained previously, it was not reasonable for [Carnagie] not to ensure the owners received his response to the allegations against him. The fact that [Carnagie] was afraid the primary owners were attempting to divest him of his ownership interest made it all the more unreasonable for [Carnagie] to refuse to personally respond to [Brick Oven], if only to simply state, "I am not resigning." Allowing [Brick Oven] to presume he had quit only hastened the divestment. [Carnagie's] actions are not the actions of a reasonable person under the circumstances.

The Board's determination that Carnagie acted unreasonably is entitled to our deference, *see Jex v. Labor Comm'n*, 2013 UT 40, ¶ 15, and we decline to disturb the Board's determination.

¶13 Carnagie also complains that the ALJ violated rules R994-508-117 and -118 of the Utah Administrative Code and other administrative procedures when she refused to reopen the hearing upon his request to admit additional evidence about the precise

timing of his attorney's late-October 2011 response to Brick Oven.[3] However, rules R994-508-117 and -118 allow a party to request the reopening of a hearing only when the party failed to participate in the hearing, either personally or through a representative. *See* Utah Admin. Code R994-508-117(2). Otherwise, an ALJ may reopen a hearing on his or her own motion if necessary to take continuing jurisdiction "or if the failure to reopen would be an affront to fairness." *See id.* R994-508-117(5).[4]

¶14    Carnagie argues that even if he was not allowed to make a request to reopen because he personally participated in the hearing, the ALJ nevertheless actually considered his request, and her refusal to reopen the hearing must therefore be evaluated against the requirements set out in rule R994-508-118. *See id.* R994-508-118 (governing requests to reopen made by a nonparticipating party). We disagree. Although Carnagie's request appears to have prompted a notation in the record by the ALJ, the notation did not purport to recognize and deny Carnagie's request. Rather, the

---

3. Carnagie also requested that the ALJ reopen the hearing to allow his attorney to testify that the attorney did not represent Carnagie at the original hearing, despite his presence at that hearing. On judicial review, Carnagie suggests that his self-representation at the hearing may have given the ALJ "an affirmative duty to elicit all relevant facts, including those favorable and unfavorable to the party that is not represented." *Nelson v. Department of Emp't Sec.*, 801 P.2d 158, 163 (Utah Ct. App. 1990) (citation and internal quotation marks omitted). However, in the administrative context, such a duty arises only when there is but one self-represented party, *see id.*, and in this case, Brick Oven also appeared without counsel through its owner, Creer.

4. Ordinarily, "[w]e review the Board's decision rather than the ALJ's." *Wood v. Labor Comm'n*, 2012 UT App 26, ¶ 4, 270 P.3d 568 (mem.). Here, however, Carnagie argues that the ALJ violated specific administrative rules governing requests to reopen and, in doing so, undermined the Board's review process. Under these circumstances, we elect to address Carnagie's argument.

notation stated, "I am not reopening the hearing," along with the ALJ's reasons for not doing so.[5] This is entirely consistent with the ALJ considering reopening the hearing upon her own motion—albeit at the prompting of Carnagie—and deciding against it for the reasons stated. *See id.* R994-508-117(5).

¶15 Carnagie has not demonstrated that the ALJ's decision somehow exceeded her discretion and was an "affront to fairness" under rule R994-508-117(5). Further, the Board made its own determinations that Carnagie had received notice prior to the hearing that he was required to present all relevant evidence at the hearing and that he failed to do so. Under these circumstances, we see no grounds to disturb the Board's ultimate decision merely because Carnagie was not allowed to present additional evidence at an additional hearing after failing to do so at the initial hearing and having indicated to the ALJ at the initial hearing that he had no further witnesses.

¶16 In sum, Carnagie has not demonstrated any substantive reason for us to disturb the Board's decision, nor has he shown that the ALJ's refusal to reopen the hearing constituted a violation of agency rules or procedures entitling him to relief. Accordingly, we decline to disturb the Board's decision affirming the denial of Carnagie's claim for unemployment benefits.

————————

5. Among the reasons stated in the ALJ's notation were that Carnagie elected to go forward with the hearing without representation, that he was given adequate time to ask questions at the hearing, and that the ALJ had "asked him if he had anyone else he wanted to testify and he told me no."