2024 UT App 77

## THE UTAH COURT OF APPEALS

DARLENE ROUSE,
Petitioner,

*v.*

LABOR COMMISSION, WALMART,
AND NEW HAMPSHIRE INSURANCE COMPANY,
Respondents.

Opinion
No. 20220797-CA
Filed May 23, 2024

Original Proceeding in this Court

Loren M. Lambert, Attorney for Petitioner

David H. Tolk, Attorney for Respondents Walmart
and New Hampshire Insurance Company

JUDGE JOHN D. LUTHY authored this Opinion, in which JUDGES
MICHELE M. CHRISTIANSEN FORSTER and AMY J. OLIVER concurred.

LUTHY, Judge:

¶1     Darlene Rouse worked for Walmart, and Walmart accommodated her various physical limitations so that she could perform her work. Rouse then sustained an industrial injury. She brought a claim against Walmart and its insurer, New Hampshire Insurance Company, (collectively, Walmart) for—among other things—permanent total disability (PTD) compensation. The administrative law judge (ALJ) over her case submitted the relevant medical questions to a medical panel. The medical panel issued a report concluding that despite the fact that Rouse "may have some residual swelling" in her leg, she was capable of performing her previous job duties and did not suffer "any sort of permanent disability" attributable to the industrial accident. The ALJ denied Rouse's claim for PTD compensation, reasoning that

Rouse failed to satisfy one of the statutory elements of a PTD claim. Rouse appealed that decision to the Appeals Board of the Labor Commission (the Appeals Board), which affirmed the ALJ's order. The Appeals Board determined that Rouse failed to prove PTD based on the element of PTD the ALJ found dispositive and based on another element the ALJ had not addressed. Rouse now seeks judicial review.

¶2    We determine that Rouse's due process rights were not violated when the Appeals Board reached an element of PTD the ALJ had not addressed and that the Appeals Board did not err in its PTD determination. We also conclude that the ALJ's evidentiary decisions that Rouse contests did not constitute abuses of the ALJ's discretion. Therefore, we decline to disturb the Appeals Board's decision.

BACKGROUND

*Rouse's Industrial Injury*

¶3    Rouse worked part time for Walmart (two eight-hour shifts per week) "retrieving inventory from a warehouse." Before the industrial accident, Rouse received accommodations in her work. She had physical limitations related to "a history of leg problems," including a vein condition for which she wore compression stockings. Walmart allowed her to use a motorized cart, which reduced the amount of walking she had to do, though she estimated that she still walked five to six miles per shift and climbed stairs three or four times per hour. Walmart also provided her with a tool "to help her reach items stored on shelves."

¶4    On July 22, 2018, Rouse was walking down a warehouse aisle and pivoting on her left foot to turn when she slipped and fell on the concrete floor. After the fall, Rouse experienced a

hematoma[1] in her left leg. In September of that year, an orthopedic surgeon (Surgeon) performed a debridement[2] of the hematoma. After the surgery, Rouse experienced swelling and mild paresthesia[3] in her left leg.

¶5    Sometime after the industrial accident, Rouse returned to her job at Walmart. Walmart gave her ninety days "to return to her pre-injury 'full duty' status." She resumed her use of a motorized cart and reaching tool, and she was also permitted to sit on a stool as needed and elevate her left leg during periods of her shift. In March 2019, however, Walmart informed Rouse that it could no longer accommodate her, and it terminated her employment.

---

1. A hematoma is "a mass of usually clotted blood that forms in a tissue, organ, or body space as a result of a broken blood vessel." *Hematoma*, Merriam-Webster, https://www.merriam-webster.com/dictionary/hematoma [https://perma.cc/C785-68U9].

   Rouse also suffered a sprain to her right shoulder and strain to her neck, but because she does not dispute that these issues were fully resolved or base her PTD claim on these injuries, we do not discuss them further.

2. Debridement is "the usually surgical removal of lacerated, devitalized, or contaminated tissue." *Debridement*, Merriam-Webster, https://www.merriam-webster.com/dictionary/debridement [https://perma.cc/VP89-SR7S].

3. Paresthesia is "a sensation of pricking, tingling, or creeping on the skin that has no objective cause." *Paresthesia*, Merriam-Webster, https://www.merriam-webster.com/dictionary/paresthesia [https://perma.cc/YZP3-CKZX].

*Rouse's Application for PTD Compensation*

¶6 In February 2020, Rouse filed an application with the Labor Commission for, among other things, PTD compensation. In March 2021, the assigned ALJ noted that the case involved "conflicting expert opinions as to whether [Rouse's] . . . industrial injury [had] resulted in permanent work restrictions." The ALJ then appointed a medical panel.

*Walmart's Motion to Exclude Live Testimony from Rouse's Expert*

¶7 Rouse filed a notice indicating that she planned to present live testimony from a physical therapist (Physical Therapist) at her upcoming hearing before the ALJ. Walmart then filed a motion in limine seeking an order "precluding [Rouse] from presenting live expert testimony from [Physical Therapist] during the administrative hearing." Walmart argued that because "[t]he Labor Commission requires the parties to prepare and submit a joint medical records exhibit containing all pertinent medical evidence" and because "[t]he conclusions and analysis of [Physical Therapist were] contained in his . . . report, which [would] be included in the joint medical records exhibit," there was "no demonstrated need for [the ALJ] to take live testimony from this medical expert witness."

¶8 The ALJ issued an order stating that "[i]t is the custom and practice of the Labor Commission to require a petitioner to make her case through the medical records of her medical providers, not through their sworn testimony at [a] hearing" and that "[t]he administrative forum simply cannot accommodate live testimony from medical providers." The ALJ also noted that Rouse had "the opportunity to use discovery to obtain—and even to create—records that evidence the nature of her physical therapy, the results of her physical therapy, and the impressions and opinions of [Physical Therapist]." Accordingly, the ALJ granted Walmart's motion in limine.

*The Medical Panel Report*

¶9 The medical panel issued a report in July 2021. The following is a summary of the medical treatment and opinions of medical providers related to Rouse's left-leg injury that the medical panel recounted in its report:

- In October 2018 a doctor hired by Walmart (Doctor 1) conducted a medical examination of Rouse and recorded a diagnosis of "left lower extremity post-traumatic hematoma secondary to the industrial accident . . . and left calf persistent swelling secondary to sequela[4] of both the surgery and the industrial injury." Doctor 1 indicated that Rouse "had not returned to her pre-injury status" and had not reached medical stability. He recommended restrictions, including not standing for longer than forty-five minutes at a time, not lifting anything over ten pounds, and avoiding kneeling and squatting for six weeks.

- An MRI performed in March 2019 identified fluid collection beneath the skin in the soft tissue in front of Rouse's shinbone just below the knee. There was diffuse fluid collection and swelling in the tissues below the skin in Rouse's lower left leg, but there was no evidence of bone inflammation, significant muscle inflammation, or a rare bacterial infection.

- In May 2019 a second doctor (Doctor 2) reviewed Rouse's medical records and opined that "the swelling and residual hematoma" visible on Rouse's MRI "did not require further treatment."

---

4. Sequela is "an aftereffect of a disease, condition, or injury." *Sequela*, Merriam-Webster, https://www.merriam-webster.com /dictionary/sequela [https://perma.cc/5W25-3BUT].

- In June 2019 another doctor hired by Walmart (Doctor 3) conducted a medical examination and attributed Rouse's "mild left persisting calf erythema[5] and swelling and mild decreased sensation" to the industrial accident. "He opined that [Rouse's] industrial injuries reached medical stability as of 6/26/19 with a 1% whole person impairment rating."

- In February 2020 Surgeon "stated that [Rouse's] industrially-caused post-traumatic hematoma necessitated the following permanent work restrictions: standing as tolerated [for] up to four hours per day, walking as tolerated with breaks, driving a cart as needed, and changing positions frequently." He also opined that Rouse's injury "reached medical stability on 6/7/19." He "concluded that [Rouse] would not be able to return to the same work she had been doing prior" to the industrial accident.

- In July 2020 Rouse underwent a functional capacity evaluation with Physical Therapist. Physical Therapist determined that Rouse "require[d] work accommodations" and "would be unable to complete a full eight-hour workday." He also indicated that Rouse "would likely need to be absent from work at least one to two days each week in order to recover from symptom flare-ups, even if she worked no more than three hours per day."

- In September 2020 yet another doctor hired by Walmart (Doctor 4) conducted a medical examination and diagnosed Rouse with "left lower leg hematoma, resolved

---

5. Erythema is "abnormal redness of the skin or mucous membranes due to capillary congestion (as in inflammation)." *Erythema*, Merriam-Webster, https://www.merriam-webster.com /dictionary/erythema [https://perma.cc/22YJ-QL9Z].

with residual intermittent swelling; bilateral lower extremity venous insufficiency/peripheral vascular disease, preexisting and unrelated to the industrial injury; [and] spinal stenosis with neurogenic claudication[6] causing left lower extremity numbness and tingling, unrelated to the industrial injury." Doctor 4 acknowledged that Rouse's industrial injury "likely worsened the swelling in [Rouse's] left lower extremity; however, she stated that the increased swelling would not translate to a disability greater than what was present prior to the accident." She "concluded that [Rouse's] industrial injury reached medical stability [on] 7/26/19 with a 1% whole person disability rating and did not thereafter necessitate work restrictions on an industrial basis."

¶10 The medical panel stated that Rouse "may have some residual swelling related to the hematoma in the anterior right leg[7] and would benefit from wearing a compression stocking with activity," but it acknowledged that "she was already wearing these stockings prior to her injury" and found that "[s]he clearly had pre-existing lower extremity swelling, likely related to

---

6. Spinal stenosis is the "narrowing of the lumbar spinal column that produces pressure on the nerve roots." *Spinal Stenosis*, Merriam-Webster, https://www.merriam-webster.com/medical/spinal%20stenosis [https://perma.cc/2JYM-PSH7]. Neurogenic claudication refers to "leg pain, heaviness and/or weakness with walking" that "aris[es] in the nervous system." *Neurogenic Claudication*, Columbia University Irving Medical Center, https://www.neurosurgery.columbia.edu/patient-care/conditions/neurogenic-claudication [https://perma.cc/EVB7-2PGY].

7. As indicated above, the hematoma and subsequent symptoms at issue involve Rouse's left leg. Rouse does not contend that this misstatement rendered this finding or the medical panel report unsubstantiated.

her age, body habitus, and venous insufficiency." The panel opined that Rouse "reached medical stability as of June 27, 2019," though it noted that she had "some residual numbness in the anterior left leg and some erythema that had been unchanged for months" at that point. The panel then stated that Rouse had "no change in her present work restrictions[] as a result of this injury" and that "[s]he is able to work full time and would have the same standing and walking 'restrictions' she previously appears to have been given." It continued, "It is unclear if these were official restrictions, but use of the electric cart would significantly reduce how much time she would be required to stand and walk. There are no restrictions on climbing or carrying. [Rouse] was medically capable of working full time and is still medically capable of working full time."

¶11    In response to a question of whether Rouse is "presently medically capable of performing the job duties of her former position at Walmart without accommodation," the panel stated,

> Yes, [Rouse] is presently medically capable of performing the job duties of her former position. Whatever justification or explanation that was provided pre-injury, which allowed her access to an electric cart for the preceding 5 years, has not changed. If she was given special dispensation for her comfort, physical tolerance, and/or work efficiency to use the cart, then this would appear to be an accommodation and continued use is reasonable. [Rouse] herself vouches for her capability in resuming her previous job duties at Walmart.
>
> [Rouse's] work injury did not result in any sort of permanent disability. Soft tissue hematomas like that incurred by [Rouse] are considered mild injuries. The injury itself was due to a mild impact

or contusion that broke the capillaries, and blood collected in the subcutaneous tissue, i.e. the adipose tissue beneath her skin. . . .

The soft tissue hematoma did not involve of any functional structures of her musculoskeletal system—it was not located within or between her muscles, nor [did] it involve a joint, ligaments, or tendons.

The panel then quoted from the operative report from Surgeon:

I made a vertical incision in the anteromedial leg over the area of fullness, sharply dissecting through skin and subcutaneous tissue. I encountered a pseudocapsule around the hematoma, which was incised and there was an obvious egress, what appeared to be old blood/hematoma from within the deep tissues. I evacuated all of the blood. There was a notable amount of thickened/devitalized fat that was also debrided including sharp excision of the pseudocapsule. Once this was performed, the wound was copiously irrigated.

¶12   With the medical panel report, the ALJ sent a notice to the parties on July 30, 2021, indicating that objections to the report would be due within twenty calendar days, a response would be due ten calendar days from the filing date of any objection, and a reply would be due five days from the filing date of the response.

*Rouse's Objection and Motion Related to the Medical Panel Report*

¶13   Rouse filed an objection to the medical panel report on August 16, 2021. In this objection, she argued that the report "should be rejected" because, among other reasons, the panel's conclusion that Rouse's "soft tissue hematoma did not involve of any functional structures of her musculoskeletal system"

contradicted Surgeon's operative report and the panel's conclusions did not accurately reflect the medical record. The objection also contained multiple derogatory references to the medical panel report, such as calling its analysis "maggot ridden" and referring to the panel's "youth-clouded folly."

¶14 On August 31, 2021, Rouse also filed a motion seeking that a letter from Surgeon be admitted into evidence. In this letter, Surgeon checked a box indicating that "[t]he surgery and hematoma did affect the deeper muscles and connective tissue." Walmart responded that Rouse's motion was not timely.

*The ALJ's Order*

¶15 In November 2021, the ALJ issued an order addressing Rouse's objection, motion, and PTD claim. Regarding Rouse's objection to the medical panel report, the ALJ condemned Rouse's attorney's use of unprofessional language in the objection. The ALJ then said,

> Further, the [c]ourt emphasizes that the Labor Commission's administrative rules contemplate that a party must proffer conflicting medical testimony in order to establish a need to clarify a medical panel report. Utah Admin. Code R602-2-2(4). Debate with the panel report, criticism of the panel report, and abuse of the panel members need not be considered.
>
> The [c]ourt has ignored the inflammatory language in [Rouse's] objection to the [medical panel] report in this matter and has read the objection for what substance it offers. However, the [c]ourt does not find merit in the objection, which is little more than debate and criticism based on rhetorical questions, hyperbolic adjective and

metaphor, and insistence that the [medical panel] physicians do not understand the terms they use in their report. Nothing in the objection approaches the standard of "conflicting medical evidence" contemplated under R602-2-2(4).

¶16    Regarding Rouse's motion, the ALJ found that it was untimely because "the deadline for objection to the [medical panel] report fell on August 19, 2021," and Rouse "did not file her motion to admit new evidence into the record until September 1, 2021."

¶17    The ALJ denied Rouse PTD compensation, basing this decision on a statutory element for establishing PTD that an employee must prove that any impairments caused by the industrial injury "prevent the employee from performing the essential functions of the work activities for which the employee has been qualified until the time of the industrial accident." *See* Utah Code § 34A-2-413(1)(c)(iii). The ALJ reasoned that Rouse's "job at Walmart required the following physical capabilities: moving up and down a ladder; walking within the work area for extended periods of time; and lifting, pushing, pulling, and carrying tools, objects, or equipment above shoulder level without assistance" and that "[p]rior to her July 22, 2018, industrial accident, [Rouse] was not capable of performing these essential job functions" without accommodation. The ALJ determined that although Rouse was "fortunate that Walmart was willing to accommodate her then existing degree of disability" by providing her with an electric cart and a reaching tool, "prior to her industrial injury, [Rouse] was already incapable of performing at least three essential functions of her job at Walmart." The ALJ stated, "In these circumstances, it is irrelevant that [Rouse's] industrial accident resulted in an additional disability. What is relevant is that [Rouse] was not rendered unable to perform the essential functions of her work for Walmart by her industrial injury." Because Rouse "was unable to perform the essential

functions of the job" "even prior to the industrial accident," the ALJ concluded that Rouse could not satisfy this element of PTD.

*The Appeals Board's Review*

¶18    Rouse appealed the ALJ's order to the Appeals Board. In her motion for review, Rouse argued that "[t]he ALJ erred by," among other things, misapplying the statutory element related to essential job functions, "barring Ms. Rouse from supplementing the evidentiary record," and "barring expert testimony." She requested that "[t]he ALJ's final order . . . be stricken and PTD benefits awarded" or, alternatively, that the case "be remanded to a new ALJ for a new hearing that allows Ms. Rouse to present [Physical Therapist's] live expert testimony."

¶19    The Appeals Board thereafter issued a decision affirming in part the ALJ's order and remanding a matter not at issue in our review. As relevant here, the Appeals Board determined that the ALJ's "denial of late-filed medical evidence in response to the medical panel's report was appropriate." As regarding the ALJ's denial of Rouse's PTD claim, the Appeals Board acknowledged that some medical providers had "characterized the effects of Ms. Rouse's work injuries as potentially permanent because she had not returned to her baseline status at the time of the accident," but it ultimately "agree[d] with [the ALJ's] decision to rely on the panel's conclusions as they are supported by the evidence." The Appeals Board agreed with the ALJ that Rouse had not proved "that her work-related injuries prevent her from performing the essential functions of the work activities for which she was qualified at the time of the accident," but it differed from the ALJ in how it reached this conclusion. It compared the work Rouse was actually able to do before the industrial accident to that which she could do afterward, saying,

> The record supports the conclusion that Ms.
> Rouse would not be able to return to the former

work she performed that required extended time standing or walking; however, she was not performing that type of work at the time of the accident. Rather, she was working part time on weekends with accommodation for her level of physical ability. The panel noted that even Ms. Rouse indicated she would be able to return to her former position with Walmart. The Appeals Board is not persuaded that the work accident and injuries, from which Ms. Rouse recovered without permanent disability, prevent her from performing the work for which she was qualified at the time of the accident.

¶20  The Appeals Board also relied on the medical panel report to determine that Rouse had not satisfied another necessary element of a PTD claim: that of proving that she "sustained a significant impairment . . . as a result of the industrial accident." Utah Code § 34A-2-413(1)(b)(i). The Appeals Board acknowledged that the ALJ "did not discuss this element," but it ultimately concluded that Rouse had failed to satisfy this element. Its analysis related to this element was as follows:

> Although the Utah Workers' Compensation Act does not define what constitutes a significant impairment, . . . the Act provides that "'impairment' is a purely medical condition reflecting an anatomical or functional abnormality or loss . . . ." Notably, an impairment rating is not the sole measure of impairment . . . .
>
> Unlike other physicians in this case, including [Physical Therapist,] after administering a functional capacity evaluation, the panel analyzed Ms. Rouse's condition in the context of her physical capacity and limitations that were present prior to

the work accident. With this perspective . . . , the panel concluded that the work accident and injuries did not change Ms. Rouse's condition with respect to her work restrictions. The panel also opined that Ms. Rouse did not incur any permanent disability as a result of her work injuries. The Appeals Board reads the panel's conclusions on these points as showing that Ms. Rouse did not sustain a significant impairment as a result of the work accident. The preponderance of the evidence supports such a finding, as the medical record shows Ms. Rouse's hematoma was treated appropriately without residual disability . . . .

(First omission in original.) Ultimately, the Appeals Board determined that because Rouse had failed to satisfy these two elements of a PTD claim, she had "therefore not established entitlement to [PTD] compensation."

¶21 After the ALJ adjudicated the issue that the Appeals Board remanded, Rouse filed a renewed motion for review. Rouse incorporated her prior motion and again contended that the ALJ erred by misapplying the element about essential job functions, "barring Ms. Rouse from supplementing the evidentiary record," and "barring expert testimony."

¶22 The Appeals Board then issued a second order, this time affirming the ALJ's decision without remanding any issues. It said,

As outlined in the Appeals Board's previous decision, the medical panel's conclusions are well-reasoned and supported by the medical record. The Appeals Board finds the panel's opinion on the extent of Ms. Rouse's work injury and her functional limitations to be persuasive. . . .

The Appeals Board also reiterates its finding that Ms. Rouse has not established entitlement to an award of [PTD] benefits because she does not meet the statutory criteria for such an award. Specifically, Ms. Rouse did not demonstrate that she sustained a significant impairment as a result of the work accident or that her work-related injuries prevent her from performing the essential functions of the work activities for which she was qualified at the time of the accident. The medical panel's conclusion that Ms. Rouse did not sustain a permanent injury and Ms. Rouse's admission to the panel that she was capable of working in the position she held prior to the accident were of significance in the Appeals Board's consideration on these criteria.

¶23   Rouse now seeks judicial review.

ISSUES AND STANDARDS OF REVIEW

¶24   Rouse presents multiple issues for our review. First, she asserts that the ALJ and the Appeals Board misapplied the Workers' Compensation Act's PTD framework. We review a legal question underlying an administrative decision for correctness, *see Provo City v. Utah Labor Comm'n*, 2015 UT 32, ¶ 17, 345 P.3d 1242, but "whether the commission correctly or incorrectly denied benefits is a traditional mixed question of law and fact," *Jex v. Utah Labor Comm'n*, 2013 UT 40, ¶ 15, 306 P.3d 799 (cleaned up). Our review on such a question "may be either deferential or de novo, depending on the nature of the particular mixed question." *Provo City*, 2015 UT 32, ¶ 17; *see also Murray v. Utah Labor Comm'n*, 2013 UT 38, ¶ 36, 308 P.3d 461 (listing three factors for determining whether review of a mixed question is deferential). On the particular question of significant impairment, "we will defer to the [Labor] Commission's significant impairment determination

if there is substantial evidence to support it." *Utah Am. Energy Inc. v. Labor Comm'n*, 2021 UT App 33, ¶ 21, 484 P.3d 1195 (cleaned up), *cert. denied*, 496 P.3d 718 (Utah 2021).

¶25 Second, Rouse contends that the ALJ erred in denying Rouse the opportunity to present live expert testimony. "The standard of review for an agency's application and interpretation of its own rules is abuse of discretion." *Wallace v. Labor Comm'n*, 2019 UT App 121, ¶ 7, 449 P.3d 218.

¶26 Third, Rouse argues that the ALJ erred in two additional decisions related to evidence: not allowing Rouse to supplement the evidentiary record with Surgeon's letter and admitting the medical panel report over Rouse's objection. "We review an agency's decisions to include or exclude evidence under an abuse of discretion standard, providing relief only if a reasonable basis for that decision is not apparent from the record." *Giron v. Labor Comm'n*, 2023 UT App 130, ¶ 19, 539 P.3d 822 (cleaned up), *cert. denied*, 544 P.3d 456 (Utah 2024).

ANALYSIS

I. The Labor Commission's PTD Determination

¶27 Rouse argues that both the ALJ and the Appeals Board misapplied the statutory framework for determining eligibility for PTD compensation. We first address a preliminary issue regarding the scope of our review of the ALJ's and the Appeals Board's orders.

A.    The Scope of Judicial Review

¶28 When a petitioner for workers' compensation benefits seeks judicial review of the decision of the Appeals Board, it is that decision—not the ALJ's decision awarding or denying benefits—that is the focus of our review. *See Wood v. Labor*

*Comm'n*, 2012 UT App 26, ¶ 4, 270 P.3d 568 ("We review the [Appeals] Board's decision rather than the ALJ's . . . ."), *cert. denied*, 280 P.3d 421 (Utah 2012). In her principal brief, Rouse focuses much of her argument on the "patently flawed analysis" of the ALJ in determining that Rouse did not satisfy the element of PTD related to essential job functions because she could not perform the listed requirements of her job without accommodation either before or after the industrial accident. But this analysis is not what is before us. Instead, we review the Appeals Board's decision, which specifically differed from the ALJ's decision in this respect. Again, the Appeals Board compared the work Rouse was performing before the industrial accident to that which she was able do afterward and said that it was "not persuaded that the work accident and injuries, from which Ms. Rouse recovered without permanent disability, prevent her from performing the work for which she was qualified at the time of the accident." Ultimately, the ALJ's analysis on this point is beyond the scope of our review.

¶29 Additionally, we note that while Rouse is seeking review of the Appeals Board's second decision—the one affirming the ALJ's order after remand—we also consider the analysis the Appeals Board provided in its first order. The Appeals Board explicitly referred in its second order to the analysis in its first order. Accordingly, we may look to its first order when considering its analysis on this issue.

B.     The Appeals Board's Denial of PTD Compensation

¶30 "[T]aken as a whole, the permanent total disability statute requires workers to prove six elements." *Provo City v. Utah Labor Comm'n*, 2015 UT 32, ¶ 6, 345 P.3d 1242. These are as follows:

> (1) the employee sustained a significant impairment; (2) the employee is not gainfully employed; (3) the employee has an impairment or

combination of impairments that limit the employee's ability to do basic work activities; (4) the impairment or impairments prevent the employee from performing the essential functions of the work activities for which the employee had been qualified at the time of the accident; (5) the employee cannot perform other work reasonably available; and (6) the industrial accident or occupational disease is the direct cause of the employee's permanent total disability.

*Id.* (cleaned up); *see also* Utah Code § 34A-2-413(1)(b)–(c).

¶31 The Appeals Board determined that Rouse failed to satisfy both the first and the fourth of these elements. As failure on either element is dispositive, our determination that the Appeals Board was correct with respect to either element defeats Rouse's claim. We elect to address element one—whether Rouse sustained a significant impairment—and we do not disturb the Appeals Board's decision that Rouse failed to satisfy this element.

1.    Rouse's Due Process Argument Regarding the First Element

¶32 As a preliminary matter, we address Rouse's contention that the issue of whether she sustained a significant impairment "was improperly determined sua sponte by the Appeals Board." Rouse argues that "the due process clause of the Utah Constitution affords all parties the right to receive notice and an opportunity to be heard on all claims that adversely affect their property interests" and that Rouse was denied this right because the ALJ did not make a finding on this element and the Appeals Board "depriv[ed] Ms. Rouse of the opportunity to brief this issue during the administrative process."

¶33    Rouse is mistaken. Utah Code section 34A-1-303 indicates that "[o]n appeal, . . . the Appeals Board may: (i) affirm the decision of an [ALJ]; (ii) modify the decision of an [ALJ]; (iii) return the case to an [ALJ] for further action as directed; or (iv) reverse the findings, conclusions, and decision of an [ALJ]." Utah Code § 34A-1-303(4)(a). The fact that Rouse indicated in her motions for review that she was claiming the ALJ erred with respect to the element related to essential job functions did not limit the Appeals Board to reviewing only that element. Rouse sought review of the ALJ's denial of her petition for PTD compensation, so the Appeals Board was authorized to affirm, modify, or reverse that denial; to reverse specific findings or conclusions made by the ALJ; or to return the case to the ALJ. *See id.* Thus, the Appeals Board was authorized to consider all of the elements of a PTD claim in its review of the ALJ's decision. Indeed, Rouse's request that "[t]he ALJ's final order . . . be stricken and PTD benefits awarded" would require the Appeals Board to determine that Rouse had proved that she qualified for PTD benefits, which necessitates satisfying all six of the elements listed above, *see Provo City*, 2015 UT 32, ¶ 6.

¶34    This point also belies Rouse's assertion that she was "depriv[ed] . . . of the opportunity to brief this issue during the administrative process." Rouse had the burden of establishing this element—and all of the other elements—to succeed on her claim before the Labor Commission. The ALJ and the Appeals Board both acted as fact finders related to the issues before the Labor Commission. *See* Utah Code § 34A-1-303(4)(a)–(d); *Carter v. Labor Comm'n Appeals Board*, 2006 UT App 477, ¶ 16, 153 P.3d 763 ("[A]lthough the ALJ initially hears the testimony and observes the witnesses, the [Appeals] Board is the ultimate fact finder . . . ."). The Appeals Board was authorized to "base its decision on . . . the evidence previously submitted in the case" if it so desired, Utah Code § 34A-1-303(4)(c), and receiving additional briefing, argument, or evidence beyond what was

presented to the ALJ was a decision at the discretion of the Appeals Board, *see id.* § 34A-1-303(4)(d) (stating that the Appeals Board "*may* permit the parties to . . . file briefs or other papers . . . or [to] conduct oral argument" (emphasis added)); *id.* § 34A-1-303(4)(c) (explaining that the Appeals Board "*may* base its decision on . . . written argument or written supplemental evidence *requested* by" the Appeals Board (emphasis added)). Accordingly, Rouse's opportunity to address the elements of a PTD claim by presenting evidence and argument to the ALJ satisfied her due process rights even in relation to the Appeals Board because this evidence and argument was also before the Appeals Board. *See State v. Hegbloom*, 2014 UT App 213, ¶ 13, 362 P.3d 921 ("Due process requires timely and adequate notice and an opportunity to be heard in a meaningful way[,] . . . [which] includes the opportunity to present evidence and argument on that issue before decision." (cleaned up)), *cert. denied*, 343 P.3d 708 (Utah 2015). In other words, Rouse's due process rights did not require an opportunity to brief this element to the Appeals Board specifically (though, if permitted to submit additional briefing, she could well have chosen to address all of the elements), and Rouse was not denied due process when the Appeals Board considered this element.

2.     Whether the Appeals Board Erred in Determining that Rouse Did Not Sustain a Significant Impairment

¶35   We next consider the merits of the Appeals Board's conclusion on the significant impairment element. An impairment is defined as "a purely medical condition reflecting an anatomical or functional abnormality or loss." Utah Code § 34A-2-102(1)(i). "The question of whether a particular impairment is 'significant' . . . requires a court to evaluate the severity of the impairment and determine whether the level of impairment exceeds a minimum threshold." *Provo City v. Utah Labor Comm'n*, 2015 UT 32, ¶ 16, 345 P.3d 1242. "Physical impairment ratings, which assess the percentage of functional loss sustained by the industrial accident,

may inform this determination." *Utah Am. Energy Inc. v. Labor Comm'n*, 2021 UT App 33, ¶ 21, 484 P.3d 1195, *cert. denied*, 496 P.3d 718 (Utah 2021). "However, Utah courts have declined to define 'significant impairment' in terms of an exact impairment-rating percentage, instead choosing to evaluate the severity of the impairment in terms of the specific individual who has suffered a work-related injury." *Id.* (cleaned up).

¶36 "We will defer to the [Appeals Board's] 'significant impairment' determination if there is substantial evidence to support it." *Id.* (cleaned up). "In conducting a substantial evidence review, we do not reweigh the evidence and independently choose which inferences we find to be the most reasonable." *Hoffman v. Labor Comm'n*, 2023 UT App 96, ¶ 25, 536 P.3d 143 (cleaned up). Moreover, "a medical panel's report alone can be enough to conclude that the [Appeals Board's] determination was supported by substantial evidence." *Id.* ¶ 24 (cleaned up); *see also Morris v. Labor Comm'n*, 2021 UT App 131, ¶ 17, 503 P.3d 519; *Valdez v. Labor Comm'n*, 2017 UT App 64, ¶ 22, 397 P.3d 753, *cert. denied*, 400 P.3d 1046 (Utah 2017); *Hutchings v. Labor Comm'n*, 2016 UT App 160, ¶ 32, 378 P.3d 1273, *cert. denied*, 390 P.3d 720 (Utah 2017); *Cook v. Labor Comm'n*, 2013 UT App 286, ¶ 18, 317 P.3d 464.

¶37 The Appeals Board's conclusion here that Rouse had not proved a significant impairment was supported by the medical panel report. The Appeals Board explained that it based its decision on this issue on the report, saying,

> [T]he panel analyzed Ms. Rouse's condition in the context of her physical capacity and limitations that were present prior to the work accident. With this perspective . . . , the panel concluded that the work accident and injuries did not change Ms. Rouse's condition with respect to her work restrictions. The panel also opined that Ms. Rouse did not incur any permanent disability as a result of her work injuries.

> The Appeals Board reads the panel's conclusions on these points as showing that Ms. Rouse did not sustain a significant impairment as a result of the work accident. The preponderance of the evidence supports such a finding, as the medical record shows Ms. Rouse's hematoma was treated appropriately without residual disability . . . .

¶38    While it is true that the medical panel stated that Rouse "may have some residual swelling related to the hematoma," it also stated that the hematoma had "reached medical stability," that Rouse had no change in work restrictions attributable to the industrial accident, that she was capable of performing her previous job duties,[8] and that she did not suffer "any sort of permanent disability" attributable to the industrial accident. The medical panel also stated that "[s]oft tissue hematomas like that incurred by [Rouse] are considered mild injuries" and "[t]he injury itself was due to a mild impact or contusion." These findings support the Appeals Board's decision that Rouse did not suffer a significant impairment. Because "the [Appeals Board's] decision is supported by the medical panel report[], the

---

8. Rouse asserts that "the panel qualified its opinion by stating that to work Ms. Rouse would have to be 'given special dispensation for her comfort, physical tolerance, and/or work efficiency to use the cart'" and that "[t]he panel went beyond its expertise opining that Ms. Rouse could be vocationally accommodated." Rouse misreads the panel's report. The panel was not opining that Rouse needed these accommodations or that a particular employer should provide them but was instead finding that Rouse could perform the same job duties she did before the industrial accident—meaning the job duties that she actually performed, as accommodated. The panel did not go "beyond its expertise" in reaching this conclusion. We also note that the approach the panel took is precisely the approach Rouse argues is correct regarding defining essential job functions.

substantial evidence standard is satisfied." *Hoffman*, 2023 UT App 96, ¶ 25 (cleaned up).

## II. Live Expert Testimony

¶39    Next, Rouse contends that the ALJ erred by not allowing Physical Therapist to present live testimony.[9] She argues, "In barring Ms. Rouse from calling her expert witness, the ALJ applied the [Labor Commission's] custom, not the law, and did not adequately explain her decision. Therefore her decision was legally improper and an arbitrary abuse of discretion."

¶40    Our court recently considered in another workers' compensation case whether an "ALJ erred in refusing to allow [a petitioner's] expert to testify in person." *Giron v. Labor Comm'n*, 2023 UT App 130, ¶ 30, 539 P.3d 822, *cert. denied*, 544 P.3d 456 (Utah 2024). We noted that "[t]he rules of evidence and procedure before a commission differ from 'the usual common law or statutory rules of evidence' and the commission is 'not bound' by them." *Id.* ¶ 32 (quoting Utah Code § 34A-2-802(1)). Indeed, "[t]he commission may receive as evidence and use as proof of any fact in dispute all evidence considered material and relevant," Utah Code § 34A-2-802(2), and "may exclude evidence that is

---

9. As we explained above, we generally review the Appeals Board's decision. *See supra* ¶ 28. However, an ALJ's evidentiary rulings will almost always impact the body of evidence upon which the Appeals Board bases its decision. *See* Utah Code § 34A-1-303(4)(b)–(c) (stating that the "Appeals Board may base its decision on . . . the evidence previously submitted in the case" and "may not conduct a trial de novo," although it may request "written supplemental evidence"). Accordingly, when a petitioner contends that an evidentiary decision by the ALJ "undermined the [Appeals] Board's review process," we may "elect to address [the petitioner's] argument." *Carnagie v. Workforce Appeals Board*, 2013 UT App 193, ¶ 13 n.4, 308 P.3d 561.

irrelevant, immaterial, or unduly repetitious," *id.* § 63G-4-206(1)(b)(i). We then pointed to the ALJ's explanation that "allowing [the petitioner's expert] to testify could distract the court from his opinion in the medical records exhibit . . . and would be procedurally unfair for opposing parties' expert witness" and its statement that the petitioner "had not provided sufficient justification as to why the court would need to hear [the expert's] testimony, rather than rely on his opinion in the [medical records exhibit]," and we concluded from these that "the ALJ provided a 'reasonable basis' for the decision to exclude live testimony—it would be duplicative, unfair, and distracting." *Giron*, 2023 UT App 130, ¶ 33 (cleaned up).

¶41 We reach the same conclusion here. When the ALJ ruled on this issue, she explained that "[i]t is the custom and practice of the Labor Commission to require a petitioner to make her case through the medical records of her medical providers, not through their sworn testimony at [a] hearing," that "[t]he administrative forum simply cannot accommodate live testimony from medical providers," and that Rouse had "the opportunity to use discovery to obtain—and even to create—records that evidence . . . the impressions and opinions of [Physical Therapist]." Accordingly, "the ALJ provided a 'reasonable basis' for the decision to exclude live testimony," *id.*, which is that hearing live testimony from Physical Therapist was unnecessary, duplicative, impractical, and contrary to the Labor Commission's custom and practice.[10] Rouse contends that "the ALJ made no

---

10. Rouse asserts, "While this may be the [Labor Commission's] 'custom,' it is inconsistent with the law." She points to an administrative rule providing that "[n]o later than 45 days prior to the scheduled hearing, parties shall file a signed pretrial disclosure form that identifies . . . expert witnesses the parties actually intend to call at the hearing," Utah Admin. Code R602-2-

(continued…)

appropriate finding that live testimony would be improper as 'irrelevant, immaterial or unduly repetitive evidence'" and that "her order is conclusory and devoid of any significant analysis," but the ALJ was not required to use these exact words, and she did provide a reasonable basis for her decision (including, in effect, that the evidence would be unduly repetitive). The ALJ did not abuse her discretion.

### III. Rouse's Motion to Supplement the Evidentiary Record and Objection to the Medical Panel Report

¶42 Finally, Rouse argues that the ALJ erred in denying her motion to supplement the record with a letter from Surgeon and in overruling her objection to the medical panel report.

#### A. Rouse's Motion to Supplement the Record

¶43 We affirm the ALJ's denial of Rouse's motion to supplement the record with the letter from Surgeon. "While the rules clearly allow the submission of late-filed medical records, such submission is at the discretion of the ALJ and by stipulation or for good cause shown." *Wallace v. Labor Comm'n*, 2019 UT App 121, ¶ 10, 449 P.3d 218 (cleaned up); *see also* Utah Admin. Code R602-2-1(H)(5) ("Late-filed medical records may or may not be admitted at the discretion of the [ALJ] by stipulation or for good

---

1(I)(3), and she argues that this language "anticipates parties can call their experts to testify at the hearing." But this language does not impose any requirement on the Labor Commission to hear live testimony from medical experts. Rouse also points to other language of the rule that "anticipates that expert medical deposition testimony can be submitted to the [medical] panel," *see id.* R602-2-1(E)(2)(c), but deposition testimony is distinct from live testimony at a hearing. Rouse's claim that the Labor Commission's custom "is inconsistent with the law" is thus unavailing.

cause shown."). Although an objection to a medical panel report may include "a proffer of conflicting medical testimony," Utah Admin. Code R602-2-2(B)(4), such objections are due within twenty days of the service of the report, *see id.* R602-2-2(B)(1). Here, Rouse did not even reach out to Surgeon to request the letter at issue until the last day of the twenty-day period for objecting to the medical panel report, and she has submitted no explanation for that delay other than to say that the deadline for objecting to the panel[] report was a "short deadline." This explanation is alone insufficient to support a finding of good cause for the late filing of Surgeon's letter. Moreover, even had Rouse established good cause, admission of the letter would still have been within the ALJ's discretion. *See id.* R602-2-1(H)(5); *Wallace*, 2019 UT App 121, ¶ 10. For these reasons, we do not disturb the ALJ's denial of Rouse's motion to supplement the record.

B.      Rouse's Objection to the Medical Panel Report

¶44      Rouse also contends that the ALJ erred by admitting the medical panel report over her objection. Rouse asserts that "[t]he ALJ's conclusory dismissal of Ms. Rouse's objection to the [medical panel report] . . . because she did not present 'conflicting medical evidence[]' . . . is contrary to the law [and] the [Labor Commission's] custom" because "there is no rule that requires the submission of 'conflicting medical evidence[]' to object to the [medical panel report]."

¶45      We note as an initial matter that the ALJ did not state that presentation of conflicting medical evidence was necessary *to raise an objection* to a medical panel report but instead that "a party must proffer conflicting medical testimony *in order to establish a need to clarify a medical panel report*." (Emphasis added.) Rouse challenges only the ALJ's decision to admit the medical report into evidence, not the lack of additional proceedings to clarify the report, *see generally* Utah Admin. Code R602-2-2(4) ("A hearing on objections to the panel report may be scheduled if there is a

proffer of conflicting medical testimony showing a need to clarify the medical panel report. Where there is a proffer of new written conflicting medical evidence, the [ALJ] may, in lieu of a hearing, re-submit the new evidence to the panel for consideration and clarification."). Thus, we need not decide whether a proffer of conflicting medical testimony is necessary to establish a need to clarify a medical panel report.

¶46    As to an "ALJ's decision whether to admit a medical panel report into evidence," that decision "is entirely discretionary, and we will provide relief only when a reasonable basis for that decision is not apparent from the record." *Right Way Trucking, LLC v. Labor Comm'n*, 2015 UT App 210, ¶ 10, 357 P.3d 1024 (cleaned up). The ALJ's reference to a lack of conflicting medical evidence was not all the ALJ said about the medical panel report and Rouse's objection to it. First, the ALJ determined (1) that the medical panel members "provided information sufficient to demonstrate that they specialize in the treatment of . . . traumatic hematoma" and (2) "that the requirements of Utah Code [section] 34A-2-601(1)(c) [were] satisfied." This provided a rational basis for the ALJ to determine that any objections to the panel based on its qualifications were unavailing. Second, the ALJ stated that she had "ignored the inflammatory language in [Rouse's] objection . . . and ha[d] read the objection for what substance it offers." Still, the ALJ stated that she did "not find merit in the objection." This was because—even aside from the inflammatory language—she found the objection to be "little more than debate and criticism based on rhetorical questions, hyperbolic adjective and metaphor, and insistence that the [medical panel] physicians do not understand the terms they use in their report." None of these things provide adequate grounds for sustaining an objection to a medical panel report.

¶47    Moreover, the Appeals Board, the "ultimate fact finder," *Carter v. Labor Comm'n Appeals Board*, 2006 UT App 477, ¶ 16, 153 P.3d 763, made findings that defeat Rouse's argument. "We

review the [Labor] Commission's refusal to exclude a medical panel report on the basis of an objection under an abuse of discretion standard, providing relief only if a reasonable basis for that decision is not apparent from the record." *Wright v. Labor Comm'n*, 2021 UT App 43, ¶ 18, 489 P.3d 211 (cleaned up). The Appeals Board said it was "not convinced by Ms. Rouse's arguments that [the ALJ] . . . erred in admitting the medical panel's report into the record over Ms. Rouse's objection" or that the ALJ "failed to fully or properly consider the substance of Ms. Rouse's objection to the medical panel's report." Instead, it said, "[The ALJ's] decision clearly outlines her reasoning for rejecting Ms. Rouse's arguments against admitting the panel[] report into evidence." Additionally, the Appeals Board stated,

> Ms. Rouse contends that the medical panel's conclusions in this matter are flawed and not consistent with the medical evidence submitted. The Appeals Board has reviewed the medical panel's report and does not agree with Ms. Rouse's characterization of its contents. The panel has authored a well-reasoned and carefully explained opinion with regard to the extent of Ms. Rouse's work injuries as well as her condition after recovering from such injuries. The panel members demonstrated their qualifications for considering the injuries in Ms. Rouse's case and provided a clear analysis on their treatment and residual effects in light of the medical evidence in the record.

> The Appeals Board is not convinced that the panel erred in its assessment of Ms. Rouse's condition. The medical record shows that certain opinions, including that of [Doctor 1], characterized the effects of Ms. Rouse's work injuries as potentially permanent because she had not returned to her baseline status at the time of the accident.

> However, the record also shows that subsequent medical opinions, such as [Doctor 2's] report, characterized Ms. Rouse's work injuries as having progressed toward resolution and a point where she required only over-the-counter medicines. After considering the entire medical record, the medical panel determined that Ms. Rouse's work injuries were medically stable and that her condition was essentially back to where it was before the accident.

The Appeals Board's findings that the ALJ did not err in admitting the medical panel report over Rouse's objections and that the medical panel did not err in its conclusions are supported by clear and rational reasoning and references to the medical record. We do not find an abuse of discretion related to the admission of the medical panel report over Rouse's objection.

CONCLUSION

¶48 The Appeals Board did not err in denying Rouse PTD compensation, and none of the evidentiary decisions Rouse disputes constituted an abuse of discretion. Therefore, we decline to disturb the Appeals Board's decision.

——————